[Decided at PENDLETON July 31, 1897.]

## BARR *v.* RADER.

(49 Pac. 962.)

AUTHORITY OF ATTORNEY TO ACCEPT PAYMENT.—An attorney at law, under the general power to represent his client, cannot accept anything other than money in satisfaction of a judgment, except by special authority; thus, an attorney cannot direct a sheriff holding an execution to accept as payment thereon a certificate of indebtedness by a garnishee, for his power and agency do not extend that far.

From Grant: MORTON D. CLIFFORD, Judge.

This is an action by Emmet Barr against George Rader to recover damages for the alleged wrongful seizure, detention, and sale of certain personal property. The facts are that on November 14, 1892, the defendant George Rader, by consideration of the Circuit Court of Grant County, obtained a judgment against the plaintiff, Emmet Barr, for the sum of $114.24, and caused an execution to be issued thereon, in pursuance of which J. D. Combs, sheriff of said county, by direction of Rader, served a notice of garnishment upon Messrs. Harrer Brothers, who, in answer thereto, admitted that they were indebted to Barr in the sum of $75, which would become due on July 30, 1893; that the sheriff thereafter collected from Barr the sum of $52.75, and, considering the answer of the garnishees as payment *pro tanto*, gave him a receipt for the amount of the judgment, and returned the execution; that an alias writ was issued, commanding the sheriff to satisfy the balance due on the judgment, in pursuance of which that officer, by direction of Rader, levied upon a stallion and a hack, the

31 *Or.—15.*

property of Barr, and on July 10, 1893, sold the latter for $39.50, and applied the amount so received to the expenses incurred on the execution; and on the same day, having collected from Harrer Brothers the amount admitted by them to be due Barr, the stallion was surrendered to its owner, and the writ returned fully satisfied.   Barr thereupon commenced an action against Combs and Rader, which, resulting in a judgment in his favor, the same was on appeal to this court reversed, and a new trial ordered: *Barr* v. *Combs,* 29 Or. 399 (45 Pac. 776).   The cause being remanded, the trial court, in obedience to the mandate, gave a judgment of nonsuit in favor of Combs; but upon the new trial the jury returned a verdict against Rader for the sum of $300, and, a judgment having been rendered thereon, he again appeals, assigning as error the action of the trial court in admitting certain evidence, refusing to grant a judgment of nonsuit as to him, and in giving certain instructions.

                                     Reversed.

For appellant there was a brief over the names of *L. Kearney* and *Lucian Everts,* with an oral argument by *Mr. Kearney.*

For respondent there was a brief and an oral argument by *Mr. Thornton Williams.*

Mr. Chief Justice Moore, after stating the facts, delivered the opinion of the court.

The right of the plaintiff to maintain this action depends upon the authority of the sheriff to accept as

payment *pro tanto* upon the judgment in the original action the certificate of Harrer Brothers to a notice of garnishment, acknowledging their indebtedness to Barr. The plaintiff contends that the sheriff, on his behalf, entered into a contract with Rader by which it was agreed that the amount so admitted to be due from Harrer Brothers to Barr should be indorsed as a payment on the writ, while the defendant insists that no such agreement was consummated, and that, the amount so admitted to be due from Harrer Brothers to Barr not having been paid, he had the right to issue the alias writ under which the levy, detention, and sale complained of were made. The evidence tends to show that Harrer Brothers had been negotiating with Barr to lease from him a pasture, but, before any agreement to that effect had been entered into, the sheriff, with the execution in his possession, by direction of Rader's attorney applied to them for a statement of the transaction, and, being informed that no agreement had been made, the notice of garnishment was not served. Harrer Brothers, however, had another conference with Barr, who agreed to lease the pasture to them in consideration of their agreement to pay $75 on the judgment rendered against him. This agreement having been consummated, the sheriff thereupon served the notice of garnishment, to which Grant Harrer, for the firm, furnished a certificate, to which he subscribed his name, thereby admitting the indebtedness, upon obtaining which the officer took the same to the office of Lucien Everts, Esq., attorney for Rader, where he also found the latter, in whose presence it was agreed that the certificate should be

signed by the firm name, whereupon the sheriff obtained the signature of Harrer Brothers and returned the same to Everts.   It also appears that Barr and Harrer Brothers had not agreed upon the time when the rent of the pasture should be paid, and when the notice of garnishment was served the latter agreed with Everts that it should become due July 30, 1893. We have given a synopsis of the testimony to explain an instruction of the court as follows: "I also charge you, gentlemen of the jury, that in this case a person like Mr. Rader, who is a judgment creditor in this execution, can either act for himself or by his duly authorized agent.   An agent is a person authorized by another to act for him, and, if you believe from the evidence in this case that Mr. Everts was the regularly employed and acting attorney for Mr. Rader in this transaction, any agreement or any contracts made between these parties, Mr. Barr and Mr. Everts, in that capacity, would be the act of Mr. Rader, and he would be responsible for them, and would be bound by the acts of his agent."

An exception to this instruction having been taken, it is contended by counsel for the defendant that an attorney has, by virtue of his general retainer, no authority to satisfy a judgment without payment thereof in money; that while Rader might have accepted Harrer Brothers' certificate to the notice of garnishment as part payment of the judgment, Everts, as his attorney, had no power to do so without special authority from his client to that effect; and that, if plaintiff would rely upon Everts' right to bind his principal, the burden was upon him to show that the

authority existed. "The plaintiff's attorney," says
Mr. Freeman in his work on Executions (2d ed.),
§ 108, "has, by virtue of his general employment in
the case, power to direct and control the execution,
though he cannot satisfy the writ except upon pay-
ment to him of the full amount thereof in money, un-
less the plaintiff has given him special authority to
compromise the debt or accept satisfaction in some-
thing not a legal tender. The burden of proving such
special authority is upon the party claiming under it,
for it will never be presumed." In *Smock* v. *Dade*, 5
Rand. (Va.) 639 (16 Am. Dec. 780), an execution was
returned indorsed, "Not executed, by order of plain-
tiff's attorney." An alias writ having been issued, the
defendant moved to quash the same, contending that
the amount for which the judgment was given had
been paid to plaintiff's attorney, and in support of the
motion gave in evidence a memorandum signed by
the latter as follows: "Received 25th November, 1822,
from Col. Laurence T. Dade, one hundred and fifty-
four dollars and seventy cents, in money; also, the
bond of William Quarles for one hundred and seventy
dollars and thirty-nine cents, payable in four months,
and a draft on Anthony Buck for three hundred dol-
lars, after ten days' sight, which, when paid, will be
in full of the execution of James Smock and Peter
Smock against him in Orange County Court. Ed-
mond Banks, Attorney." The trial court, on this evi-
dence, having quashed the writ, an appeal was taken;
and SUMMERS, J., in reversing the judgment, says:
"The authority of the attorney to receive payment of
the debt which he is employed to recover we think

well settled; but that authority, in our opinion, does
not extend to its commutation without the assent of
the client. In relation to Quarles' bond, we regard
Banks as the attorney of Dade, not of Smock. On
giving an acquittance or receipt for the money, he
must have represented the former, not the latter. It
was a new engagement, in which all his authority was
derived from Dade. To him he must have looked for
compensation, and to him he was accountable. To
extend the authority of the attorney beyond this limit,
without a general discretionary power from the party
employing him, would carry the responsibility of the
first client into transactions far beyond the first en-
gagement, and which might be induced solely with a
view to the profit of the attorney or the accommoda-
tion of the debtor."

In *Herriman* v. *Shomon,* 36 Am. Rep. 261, Messrs.
Schulenberg and Company recovered judgment against
the defendant, and thereupon assigned the same to
plaintiff, who caused an execution to be issued there-
on, in pursuance of which a levy was made upon the
defendant's stock of goods. Shomon thereupon com-
menced this suit to restrain proceedings under the
writ, claiming that he had delivered to the attorney of
Schulenberg and Company a county warrant, which
was received as payment *pro tanto* on the judgment.
A trial was had, and the court, having found that the
judgment had been paid before the issue of the execu-
tion, gave a judgment as prayed for, in reversing
which BREWER, J., says: "There is no pretense that
the plaintiffs in the judgment knew of the action of
their attorney, authorized or ratified it, or that he had

any special directions or authority in the matter. He had simply the general authority of an attorney in the collection of a judgment. But this general authority is to receive money only in payment. He can neither sell, assign, nor compromise a judgment, nor receive notes, warrants, goods, chattels, or land in payment. Receiving a county warrant is simply exchanging a judgment claim against a debtor for a claim against a county. It matters not that the debtor is insolvent, and the warrant valid and valuable. The attorney is employed to collect; that is, receive the money due on the judgment, and not to trade the claim for anything apparently or in fact more valuable. The authorities in this direction are clear and abundant." To the same effect, see, also, Freeman on Executions (2d ed.), § 108; Weeks on Attorneys at Law, §§ 240, 242; 3 Am. & Eng. Enc. Law (2d ed.), 363, and notes; Freeman on Judgments (2d ed.), § 463. The instruction complained of is, under these authorities, clearly erroneous; and, such being the case, we are compelled to reverse the judgment and order a new trial.

REVERSED.