Argued 26 January, decided 3 April, rehearing denied 22 May, 1905.

### FLEISHMAN *v.* MEYER.

#### 80 Pac. 209.

PLEADING SEPARATE DEFENSES—WAIVER OF MOTION TO STRIKE OUT—WAIVING RIGHT TO REQUIRE AN ELECTION.

1. An objection to an answer because it contains several defenses not separately stated must be made by a motion to strike, under Section 81, B. & C. Comp., or it will be considered as waived, and cannot afterward be urged. For instance, after replying to an answer containing several defenses, plaintiff cannot at the trial ask that defendant, elect on which defense he will rely.

WHEN ELECTION OF DEFENSES MAY BE REQUIRED.

2. An election of remedies or defenses will not be required unless the facts constituting the different causes or defenses are so inconsistent that the proof of one disproves another.

This is an instance where an election should not be required. In an action for damages for failure to deliver personal property within the time required by the contract of sale, the answer set out as an excuse the condition of the bar at the entrance of a bay which was a part of the route for delivery by water, caused by storms which had prevailed for a long time prior to the date limited for delivery, and the cause of failure to deliver was alleged to be an act of God. The answer also set out the receipt by plaintiffs, after the time limited for delivery, of a portion of the property, in pursuance of a modified agreement, and it was averred that plaintiffs thereby waived all demands arising out of the original contract. *Held,* that, even though the answer set out more than one defense, the averments therein were not so inconsistent as to compel the defendants to elect on which one they would rely.

ACT OF GOD AS EXCUSING NONPERFORMANCE OF CONTRACT.

3. The act of God that will excuse the failure to perform a contract must be one that renders performance physically impossible, not merely impossible by the means usually employed. Thus, performance of a contract to deliver chattels at a distant point usually reached by water, yet with a usable land route, is not excused by storms interrupting navigation, for access by land was still available.

DENYING MATTER OF INDUCEMENT.

4. Matters of inducement in a pleading are not material, and need not be denied.

RESPONSIBILITY FOR INVITED ERROR.

5. Error brought about by the conduct of a complaining party is not available; as, where plaintiffs, instead of ignoring matter of inducement in an answer, denied it, any error in admitting evidence tending to prove such matters, because presenting to the jury an immaterial issue, calculated to mislead them, was invited by plaintiffs' pleading, and hence is not available error.

ATTORNEY AND CLIENT—COMPROMISING CLAIM.

6. Outside of pending litigation, and unless under exceptional circumstances, an attorney has no implied authority to compromise or settle a client's claim.

From Lane: JAMES W. HAMILTON, Judge.

Statement by MR. JUSTICE MOORE.

This is an action by I. Fleishman and D. J. Guggenhime, partners as. Guggenhime & Co., against Michael Meyer and William, Kyle, partners as Meyer & Kyle, to recover damages alleged to have been sustained in consequence of the breach of an agreement. The facts are that on May 4, 1903, the parties entered into the following contract:

"Meyer & Kyle, of Mapleton, Oregon, have this day sold to Guggenhime & Co., of San Francisco, and Guggenhime & Co. have this day bought of Meyer & Kyle, about five tons more or less choice cascara sagrada at three and three eighths (3⅜) cents per pound, delivered, San Francisco. Shipment to be made early during the season as possible, but to reach San Francisco not later than October 1, 1903. Goods to be choice quality, well cured and dried and free from moss and to be put up in strong bags, one-half wool bags preferred. Terms: Cash, after receipt and inspection of goods at San Francisco.

Guggenhime & Co., Buyer.

Meyer & Kyle, Seller."

The plaintiffs, not having received any of the bark, commenced this action November 27, 1903, alleging that on October 1st of that year choice cascara sagrada, at San Francisco, was of the market value of 15 cents per pound, and that by reason of defendants' failure to deliver the goods, they had been damaged in the sum of $1,162.50. The answer denies the material allegations of the complaint, and, for a further defense, avers that the only means of conveying freight from Mapleton, Oregon, defendants' place of business, to San Francisco, was by vessels, as plaintiffs well knew, whereupon it was understood and agreed that the bark should be transported in that manner; that on October 1, 1903, defendants were ready and willing to ship such bark, but, by reason of the act of God, to wit, the condition of the bar at the entrance of the Siuslaw Bay, caused by storms which for a long time prior thereto had prevailed, they were, without their fault, prevented from keeping the terms of their

agreement, and so notified plaintiffs, who, on October 23, 1903, stipulated in writing, in consideration of the premises, and by way of compromise, to accept two and one half tons of such bark at the price agreed upon, provided it was shipped to them as soon as a vessel could cross the bar; and that, in pursuance of the modified agreement, defendants on November 25, 1903, shipped and delivered at San Francisco 5,216 pounds of cascara sagrada, which plaintiffs received and accepted, thereby waiving any and all demands arising out of the original contract, and in full performance thereof. The reply denies the material allegations of new matter in the answer, except the receipt of the bark shipped by the defendants, for which it is averred plaintiffs paid the contract price, and judgment is demanded therein for the sum of $556.14 damages alleged to have been sustained by reason of defendants' failure to deliver the entire quantity originally agreed upon, though in a letter written June 25, 1903, by plaintiffs to defendants, the following language appears:

"The expression in a contract 'more or less' always signifies 10 per cent. Therefore, if you have a contract with us for 10,000 lbs. we must be satisfied if you ship us only 9,000 lbs., but this we certainly expect."

A trial being had, defendants secured judgment for their costs and disbursements, and plaintiffs appeal.　　　Reversed.

For appellants there was a brief over the names of *Teal & Minor, George B. Dorris* and *William C. Bristol,* with an oral argument by *Mr. Joseph N. Teal.*

For respondents there was a brief over the names of *Thompson & Hardy* and *L. Bilyeu,* with an oral argument by *Mr. Charles A. Hardy* and *Mr. Bilyeu.*

Mr. Justice Moore delivered the opinion.

1. The sufficiency of the answer was not challenged by motion or demurrer, but, after the jury were impaneled, plaintiffs' counsel, insisting that such pleading contained several defenses not separately stated, orally requested the court to require defendants to elect upon which one they would rely at the trial; but, the application having been denied, an exception was saved, and it is maintained that an error was thereby committed. The statute

permits a defendant to set forth by answer as many defenses as he may have, but they must be separately stated, and refer to the cause of action to which they are intended to apply: B. & C. Comp. § 74. "The statute," says a text-writer, "while permitting several defenses and several counterclaims, requires them to be separately stated; and, if a single statement contains one defense, followed by allegations that will constitute another, the latter should be stricken out": Bliss, Code Pl. (3 ed.), § 424. A motion to strike out a pleading because several causes of defense therein are not separately stated must be made within the time required for answering such pleading: B. & C. Comp. § 81. In construing this section it was held in *United States* v. *Ordway* (C. C.), 30 Fed. 30, that a defect in an answer in which distinct defenses were not separately stated was waived by demurring thereto on that ground. In the case at bar, plaintiffs' counsel, by denying in their reply the allegations of new matter in the answer, thereby waived any defect therein based on the ground alleged.

2. Besides, a defendant can be required to elect on which of several defenses he will rely only where the facts stated therein are so inconsistent that, if the truth of one defense be admitted, it will necessarily disprove another: *Pavey* v. *Pavey,* 30 Ohio St. 600; *Cox* v. *Cox,* 26 Pa. St. 375 (67 Am. Dec. 432). If it be admitted that the answer set out more than one defense, the averments therein are not so inconsistent as to compel an election.

3. Contracts are usually entered into with the tacit understanding of the parties that the ordinary methods of executing the terms of their agreement will be pursued: *Johnston* v. *Barrills,* 27 Or. 251 (41 Pac. 656, 50 Am. St. Rep. 717). Though by invoking this rule it might reasonably be inferred that the parties to this action understood that the bark in question would ordinarily be shipped down the Siuslaw River and bay to the Pacific Ocean, and thence to San Francisco, the interruption of navigation on any part of the way does not destroy the possibility of transporting the bark to its destination, for it might have been hauled in wagons from Mapleton to Eugene, a distance of about 80 miles, and thence carried by rail to San Francisco. The pos-

sibility of executing the contract in the manner last indicated demonstrates that the inability of a vessel to cross the Siuslaw bar, by reason of the storms that prevailed prior to and on October 1, 1903, when the bark should have been delivered in San Francisco, was not such a dispensation as would excuse defendants from performing the terms of their agreement, or exempt them from liability in an action instituted to recover the damages sustained by reason of their breach of the contract: *Pengra* v. *Wheeler,* 24 Or. 532 (34 Pac. 354, 21 L. R. A. 726) ; *Reid* v. *Alaska Packing Co.* 43 Or. 429 (73 Pac. 337) ; *Anderson* v. *Adams,* 43 Or. 621 (74 Pac. 215). The trial court evidently adopted this view, for, in charging the jury, they were told, in effect, that, unless the original contract stipulated that the inability to transport the bark by water would justify a violation of the agreement, the nonperformance of its terms by reason of the interruption of navigation afforded no defense to the action.

4. An examination of the answer will show that the principal fact therein stated to defeat a recovery against the defendants is the alleged modified agreement, whereby it is averred that plaintiffs were to accept two and one half tons of bark in lieu of the quantity stipulated for in the original contract. If the modification was consummated as alleged, the delivery of the bark, admitted to have been received, constituted a complete defense to the action. The statement of facts, preceding the averment of the modification, in relation to the condition of the bar at the entrance of the Siuslaw Bay, constitutes a history of the transaction which naturally precedes and logically leads up to the gravamen of the defense, forming mere matters of inducement that should be pleaded to enable the court to determine whether or not a prima facie case was presented; but the facts thus stated are not deemed material and need not be denied: *Gardner* v. *McWilliams,* 42 Or. 14 (69 Pac. 915).

5. Instead of ignoring the narrative constituting the alleged inducement, plaintiffs, in their reply, denied the statement thereof, and, over their objection and exception, testimony was introduced tending to show the condition of the Siuslaw bar, thus presenting to the jury an immaterial matter that was well calculated to divert their attention and possibly induce a verdict,

notwithstanding the court's instruction in relation to the alleged dispensation. The error of which plaintiffs complain in this respect thus seems to have been invited by their own pleading. If, however, the condition of the bar was alleged as tending to show an act of God, to excuse a performance of the terms of the agreement, the facts stated are insufficient to constitute a defense of that kind, and the answer should have been corrected in this respect by a seasonable application to the court for that purpose.

6. In view of the conclusion we have reached on another branch of the case, it has been deemed proper briefly to detail the state of the pleadings, so that, in case another trial is had, the jury may not possibly be misled in the manner indicated. Plaintiffs' counsel requested the court to charge the jury as follows:

"I instruct you that an attorney at law, in the absence of express authorization thereunto, has no authority whatever to compromise or settle a claim for his client. So, if you find from the evidence that the defendants wrote to Heller & Powers, then acting as plaintiffs' attorneys, offering less bark than that required by the contract in evidence, and that Heller & Powers replied thereto and undertook to accept the same, that does not bind the plaintiffs in this action as upon a compromise or settlement for such less amount of bark, unless you can find from the evidence the authority and power conferred upon Heller & Powers by the plaintiffs so to do."

The court having refused to give the instruction so requested, an exception was saved, and it is contended by plaintiffs' counsel that the action in this respect was erroneous. The bill of exceptions shows that, to enforce the payment of their claim for damages resulting from an alleged breach of the agreement, plaintiffs employed a firm of attorneys, to whom defendants wrote a letter, of which the following is a copy, to wit:

"Eugene, Oregon, October 21, 1903.
Messrs. Heller & Powers,
               San Francisco, Cal.—
Dear Sirs:
We have just received your letter of the 17th sent to our Mapleton store. Now it seems to us that Messrs. Guggenhime & Co. are a little hasty in this matter they turn over to you. We were acting in good faith with them, and they should do

the same with us, except they are looking for trouble. We have something over two and one half tons of bark for them and we may get some more. It has been turned over to the steamboat company to bring to S. F. last trip of str. 'Acme.' She had to go out almost empty on account of there not being water on the bar to float her out, and this is our only way of getting freight of this class to S. F. We wired the owners this morning from here, asking them when she would be back, and if they would take the bark. They answered she was not coming back until the bar got better, so that is how the matter stands. We will have a chance to ship it to Coos Bay, and from there to San Francisco in the course of two or three weeks. Now if Guggenhime & Co. wishes to take the bark when it gets to S. F. we will ship it that way; on the other hand, if they won't take it, we will not ship it, and they can go on with their lawsuit, as we are not responsible for the acts of Providence. We have notified them from time to time during the summer just how matters stood. We have acted in good faith all through and have nothing to regret. Your proposition will not be accepted. We will do as we agreed to. If they can get the bark out of the Siuslaw quicker than we can, let them go ahead and try it.

Yours, resp:,

Meyer & Kyle."

The defendants, in response to their communication, received the following answer:

"San Francisco, October 23, 1903.

Messrs. Meyer & Kyle,
Mapleton, Oregon—

Dear Sirs:

Yours of October 21, 1903, to hand and contents carefully noted. We are no more desirous of having any trouble over the matter referred to than you are; nevertheless, you must clearly see that your contract with Messrs. Guggenhime & Co. has been broken. The act of Providence which you mention as having prevented your keeping your agreement, to have the bark in San Francisco by October 1, 1903, will not avail you very much as a defense in the event of an action.

You state, however, that you have a chance to ship two and one half tons of bark in the course of two or three weeks, and to show that we desire no lawsuit in the matter we will await this shipment before taking further steps. Failure on your part to make the shipment within the time specified will cause us to take the proceedings we have in contemplation. Kindly notify us promptly of shipment.

Yours very truly,

Heller & Powers."

[18—46 Or.]

In pursuance of this correspondence, defendants on November 25, 1903, shipped 5,216 pounds of cascara sagrada to San Francisco, which plaintiffs received and paid the contract price for on December 14th of that year. A perusal of these letters will show that it is possible to infer therefrom that the two and one half tons of bark were to be shipped in lieu of the quantity originally specified, for the defendants' letter states that, if plaintiffs will accept the bark, it will be sent, but, if they will not take it, the cascara sagrada will not be shipped, and Guggenhime & Co. can proceed· with their action. The letter written by Heller & Powers states that, to show no lawsuit was desired, they would await the shipment before taking any further steps. A meeting of the minds as to the subject-matter might possibly be inferred from the correspondence, which is rather obscure in relation to any compromise; but, if an agreement was thereby consummated, it would be binding on plaintiffs only in case the agency of Heller & Powers was sufficient for that purpose. The defendants' offer having been accepted in San Francisco, the laws of California relating to the authority of an attorney must govern. The statute of that State, however, was not offered in evidence, and, for lack of such proof, the rules of the common law must control in determining the authority of Heller & Powers to bind plaintiffs by the alleged modified agreement. "As a general rule," say the editors of the Cyclopedia of Law & Procedure (4 Cyc. 945), "an attorney without special power is not authorized to compromise his client's claim. There is, however, no objection to giving an attorney special authority to compromise, and in rare instances the nature of the business may be such that a power to compromise will be implied, in which cases the act of the attorney in agreeing to the compromise would bind the client." Authority to compromise a claim, as mentioned in the exception noted, will be implied only in the regular course of pending suits and actions, when an attorney has neither time nor opportunity to consult with his client, whose interests would be imperiled by delay: *Union Mut. Life Ins. Co.* v. *Buchanan,* 100 Ind. 63; *In re Heath's Will,* 83 Iowa, 215 (48 N. W. 1037); *Brockley* v. *Brockley,* 122 Pa. 1 (15 Atl. 646). The weight of authority in this country supports the rule that

an attorney, by virtue of a mere retainer, has no implied power
to bind his client by a compromise of his claim: 3 Am. & Eng.
Enc. Law (2 ed.), 358; *Barr* v. *Rader,* 31 Or. 225 (49 Pac. 962) ;
*Huston* v. *Mitchell,* 14 Serg. & R. 307 (16 Am. Dec. 506) ; *Fitch*
v. *Scott,* 3 How. (Miss.), 314 (34 Am. Dec. 86) ; *Holker* v.
*Parker,* 7 Cranch, 435 (3 L. Ed. 396) ; *Preston* v. *Hill,* 50 Cal.
43 (19 Am. Rep. 647).  No action between plaintiffs and defend-
ants was pending when Heller & Powers wrote the letter of
October 23, 1903, so that the necessity for speedy settlement
did not exist.  Besides, plaintiffs and their attorneys resided in
San Francisco, and there was, in all probability, plenty of time
and ample opportunity to confer with each other in relation to
the proposed compromise.

The instruction requested stated the law applicable to the
facts involved, and, for the refusal of the court to give it, the
judgment is reversed and a new trial ordered.

REVERSED.

Decided 16 January, 1905.