Argued at Pendleton May 4, affirmed June 21, 1921.

## SEAWEARD v. DE ARMOND ET AL.

(198 Pac. 916.)

**Judgment—Evidence Held Insufficient to Show Agreement to Release on Part Payment.**

1. Evidence *held* insufficient to show that defendant, who had a judgment against a decedent and others, agreed to release the judgment on payment of his *pro rata* share of the assets of the estate, or to accept such payment in full satisfaction, or that his attorneys ever made such promise or agreement.

Compositions With Creditors—Defined.

2. A "composition with creditors" is an agreement between an insolvent or embarrassed debtor and his creditors, whereby the creditors, in consideration of an immediate payment, agree to accept a dividend less than the whole amount of their claims, to be distributed *pro rata* in discharge and satisfaction of the whole debt.

Compositions With Creditors—Burden of Proof on Party Alleging.

3. Plaintiff, suing to enjoin a sale under execution on the ground that the judgment creditor was a party to a composition between another judgment debtor's administrator and creditors, had the burden of proving a composition agreement on the part of the judgment creditor.

Attorney and Client—Attorney Without Authority to Compromise Judgment in His Hands for Collection

4. An attorney, to whom a judgment was intrusted for collection, had no power, in the absence of express authority, to bind his client by a compromise of the amount due on the judgment, and if he agreed to accept less than was actually due in full satisfaction, the client was at liberty to ignore the compromise and collect the full amount.

Vendor and Purchaser—Purchaser Charged With Notice of Docketed Judgment Against Vendor.

5. Under Section 205, Or. L., providing that from the date of docketing a judgment it shall be a lien on all the real property of the defendant one purchasing land from one of the defendants in a properly docketed judgment was charged with notice of the judgment.

From Malheur: DALTON BIGGS, Judge.

In Banc.

This is a suit to enjoin the sale of real property, instituted by J. H. Seaweard, plaintiff and appellant, against R. H. De Armond, and H. Lee Noe, as sheriff of Malheur County, Oregon, defendants and respondents. Seaweard had acquired fee-simple title to the land from one C. E. Belding. As plaintiff in an action at law, R. H. De Armond, defendant herein, on January 31, 1918, obtained a judgment for the sum

4. Right of attorney to compromise client's cause of action, see notes in 21 Ann. Cas. 577; Ann. Cas. 1915B, 832.

of $569.35, with interest thereon at the rate of 10 per cent from January 1, 1912, and for $78 costs and attorneys' fees, against S. F. Taylor as administrator of the estate of A. A. Brown, deceased, C. E. Belding, and others. This judgment was, on January 31, 1918, duly docketed in the judgment lien docket in the Circuit Court of the State of Oregon for Malheur County, in the office of the county clerk, and thereby became a valid and subsisting lien on the W. ½ of N. E. ¼ of Sec. 8, Twp. 18 S., R. 47 E.; W. M., the real property of C. E. Belding which was thereafter by him conveyed to Seaweard, the plaintiff in this suit. On June 17, 1919, De Armond caused execution to issue and placed it in the hands of H. Lee Noe, sheriff of said county, with instructions to levy upon the land belonging to plaintiff and described above. Thereafter, on the application of Seaweard, plaintiff in this suit, the court issued a temporary injunction, restraining the sale of the said premises. The complaint alleges, among other things:

"That on or about the twentieth day of September, 1918, all of the creditors of the estate of A. A. Brown, deceased, including defendant R. H. De Armond, made and entered into an agreement whereby each of the said creditors agreed with S. F. Taylor, the administrator of the estate of A. A. Brown, deceased, to accept a *pro rata* share of the assets of the estate of the said deceased in full satisfaction of their demands, and of the demands of each of said creditors.

"That then and there W. H. Brooke, as attorney for the said R. H. De Armond, made, executed and delivered a receipt in writing in words and figures as follows:

'Received this day from S. F. Taylor, as administrator of the estate of A. A. Brown, deceased, the sum of $1173.60 for the following items in *pro rata* satisfaction thereof:

Judgments of R. H. De Armond.....$870.14
          And of
Judgment of A. L. Sprowl.......... 291.46
Also for Revenue Stamps........... 8.00
On John Woods deed and for record-
    ing quitclaim deeds to John Wood. 4.00
                                    ———
          Total .....................$1173.60
                                    'W. H. BROOKE,
'Attorney for Judgment Creditors Above, and John
    Wood.' "

The defendant admitted the receipt of a *pro rata* share of the assets of the estate, but denied that the same was accepted in full satisfaction of the judgment against Taylor, as administrator of the estate of A. A. Brown, deceased, Belding et al. Defendant alleged, among other things:

"That plaintiff is now, and ever since January 31st, 1918, has been, charged with notice of said judgment and that same was a valid and subsisting lien upon the premises of C. E. Belding, and particularly the premises described in plaintiff's complaint, and that said plaintiff was charged with said notice, and had actual notice of said judgment prior to the time he purchased said property and paid for the same, and prior to the time of the execution of said deed, and that said plaintiff accepted the deed therefor, charged with notice that said judgment was a valid and subsisting lien upon said property."

Among the findings of fact made by the court we quote the following:

"That said estate of A. A. Brown, deceased, was unable to pay its creditors in full and there were various meetings of the creditors of said estate at which was discussed the question of accepting *pro rata* the assets of said estate, and an agreement was signed by most of the creditors of said estate agreeing to accept a *pro rata* division of the assets of said estate in satisfaction of the claims of the creditors

signing such agreement. This agreement was not signed by defendant, R. H. De Armond, or anyone in his behalf, and the court finds that R. H. De Armond did not agree to accept any division of the proceeds of said estate in full satisfaction of his claim against said estate. That on the contrary he accepted and applied in partial satisfaction of his said judgment mentioned in plaintiff's complaint the *pro rata* part of the proceeds distributed by said estate.

" * * And that thereafter one of the attorneys for said R. H. De Armond partially satisfied said judgment mentioned in plaintiff's complaint of record, wherein, after reciting the premises, such satisfaction reads: 'Now, therefore, this is to acknowledge receipt thereof and to partially settle said judgment in said sum of $467.44 as of September 20, 1918.'

"That there has been no release or satisfaction of said judgment mentioned in plaintiff's complaint, except that said judgment has been partially satisfied in the sum of $467.44 as of September 20, 1918."

From the findings of fact, the court made the following conclusions of law:

"That said judgment is now, and ever since its rendition on January 31, 1918, has been, a valid and subsisting judgment and lien against the real property of the defendants therein, including the real property of C. E. Belding and including the real property described in plaintiff's complaint.

"That plaintiff * * took conveyance of said real property subject to the lien of said judgment.

" * * That said judgment has not been canceled or satisfied in any manner except by partial payment of $467.44."

Based upon said findings of fact and conclusions of law, the court decreed that plaintiff's suit be dismissed and that the temporary injunction be dissolved.

The plaintiff, in his appeal to this court, assigns error as follows:

"In finding that the judgment held by the defendant R. H. De Armond * * was a lien on plaintiff's lands * * .

"In finding that the defendant De Armond did not make a full and complete settlement of his judgment * * when he accepted from Taylor as administrator of the estate of A. A. Brown, deceased, the sum of $870.14 * *

"In finding that De Armond did not agree with the other creditors of the estate of A. A. Brown, deceased, to accept a *pro rata* payment in full settlement of his judgment claim against the said estate.

"In finding that the receipt described in * * the complaint was not given in full settlement of the judgment of De Armond, * * and that plaintiff took a conveyance of his lands subject to any such judgment."

AFFIRMED.

For appellant there was a brief over the names of *Mr. C. McGonagill* and *Mr. W. W. Wood,* with an oral argument by *Mr. McConagill.*

For respondent there was a brief over the names of *Mr. P. J. Gallagher* and *Mr. W. H. Brooke,* with an oral argument by *Mr. Gallagher.*

BROWN, J.—Plaintiff asserts that it was the general understanding of the creditors of the estate of A. A. Brown, deceased, that a *pro rata* payment from funds derived from the sale of the real property belonging to that estate amounting to $19,800 was to be in full satisfaction of all claims against the estate. Plaintiff further charges that R. H. De Armond, defendant herein, accepted a *pro rata* of the funds with the understanding that it was in full settlement of his judgment against the estate of A. A. Brown, deceased, C. E. Belding and others.

1. There was evidence given by S. F. Taylor, the administrator of the said estate, and by W. E. Lees, his

attorney in the matter of the estate, also by W. W.
Wood, an attorney for certain creditors of the estate,
to the effect that there was an understanding gener-
ally among the creditors that the proceeds of the sale
of the real property belonging to the Brown estate
were to be received in full satisfaction of all claims
against the same.    The administrator testified that:

"The creditors had a meeting and agreed among
themselves, as there was not sufficient funds to pay
all these claims in full, to take their payment *pro
rata* from the funds on hand which were derived from
the sale of the property. * * My understanding of
the agreement was that everything was to be settled
at that time as per this agreement *pro rata,* and that
all judgments, satisfactions were to be entered of
record for all judgments."

He further testified that he did not remember what
the *pro rata* was; that Mr. Lees was the attorney for
the estate and was looking after it.

Concerning the agreement among the creditors to
satisfy their demands upon a *pro rata* payment, W. E.
Lees, the attorney referred to, testified, among other
things:

"These creditors that were mentioned in this stipu-
lation here were there, and there were others.    Some
of them were represented by their attorneys and Mr.
Brooke and Mr. Gallagher were there, or one of them,
I am not certain which—were representing Mr. De
Armond; and the fact is I don't know whether there
were any of these other creditors there personally or
not.    I think they, most of them, were represented by
attorneys."

Witness said, in substance, that according to his
recollection the meeting resulted in the understand-
ing that the creditors were to accept *pro rata* pay-
ments in full settlement of their respective claims.
On cross-examination, he said:

"I don't remember very much about it only in a general way. I do remember about this meeting up there and by reading this, refreshing my memory here as to what was determined on, but I don't remember any of the details. I know there was some talk and I think there was some satisfaction that was executed there; that is, of the judgment lien."

Referring to the De Armond judgment, he testified:

"Well, I don't remember just how his claim was satisfied or what was done. I know, as I have testified, that there was a meeting of the creditors up there and as I recollect it there was an agreement in substance as stated here, that they would share *pro rata*.

"Q. But you didn't understand either Mr. De Armond to say, or his attorneys to say, that they were taking that much in complete satisfaction against the other judgment debtors?

"A. No, I don't say that, because I don't remember it."

W. W. Wood testified that he attended a meeting of the creditors of the estate some time in the summer or fall of 1918 as the legal representative of certain clients who were creditors; that the general understanding among the creditors was that the claims were to be settled from the proceeds derived from the sale of the real property, divided *pro rata* among the creditors. He said:

"I understood that the assets were to apply in full satisfaction of the claims."

A careful search of the testimony of plaintiff's witnesses does not reveal that the defendant De Armond ever agreed to release his judgment upon a *pro rata* payment, or to accept such payment in full satisfaction thereof, nor does it appear that W. H. Brooke or P. J. Gallagher, his attorneys, ever promised or agreed upon the part of De Armond to satisfy the

judgment in question upon the receipt of a *pro rata* payment from the available funds arising from the sale of the real property belonging to the estate of A. A. Brown, deceased; neither does the evidence show that they, or either of them, undertook to compromise the claims represented by them.

A stipulation executed by certain creditors of the estate of Albert A. Brown, deceased, among other things recites that:

"We will accept in full payment and satisfaction of our respective claims against said estate a *pro rata* of the net proceeds of the said estate, the same to be based upon the payment of a *pro rata* per cent of our respective claims and determined by the face or principal of said claims without interest, and each and every of said claims to receive the same per cent, which said per cent shall be determined by dividing the net proceeds of said estate by the total amount of the face or principal amount of said claims."

This stipulation was signed by several creditors, but not by, or for, De Armond.

The receipt referred to in the pleadings and offered in evidence, signed by "W. H. Brooke, Attorney for Judgment Creditors," does not profess to be a receipt for satisfaction in full of the judgment referred to herein. It reads, "*pro rata* satisfaction."

It is true, as argued by counsel for plaintiff, that the release of the judgment debt as claimed in the instant case, would operate as a release of the judgment lien upon the property of the plaintiff, a joint judgment debtor.

Plaintiff maintains that a composition agreement was entered into between the defendant De Armond with other creditors of the estate of A. A. Brown, deceased, and S. F. Taylor, the administrator thereof.

2. A composition with creditors is defined as an agreement between an insolvent or embarrassed

debtor and his creditors, whereby the creditors, in consideration of an immediate payment, agree to accept a dividend less than the whole amount of their claims, to be distributed *pro rata* in discharge and satisfaction of the whole debt: *Continental Nat. Bank* v. *McGeoch,* 92 Wis. 310 (66 N. W. 606); 5 R. C. L., p. 868.

3. Plaintiff has failed to prove any composition agreement upon the part of defendant De Armond. The law puts the burden of proof upon him who alleges.

The defendant never made such an agreement, and if the record disclosed—which it does not—that De Armond's attorneys entered into a contract to accept a *pro rata* claim in full settlement of the judgment held by him, there is an utter absence of proof of any authority conferred upon them, or either of them, by their client, whereby they would be authorized to compromise his claim.

4. It is a rule of law, supported by an abundance of authority, that an attorney has no power, in the absence of express warrant, to bind his client by a compromise of the amount due on a judgment intrusted to him for collection. If the attorneys for De Armond compromised his claim by agreeing to accept a sum less than actually due on the judgment in full satisfaction thereof without authority from him, he is at liberty to ignore such compromise and proceed with the collection of his judgment the same as if it had never been attempted.

The rule stated by Weeks on Attorneys at Law (2 ed.), 471, is this:

"It is laid down in American cases that an attorney has no authority arising from his employment in that capacity, no implied power, to compromise his

client's claim, or to settle a suit and conclude the client, without the latter's consent."

Thornton on Attorneys at Law, Volume 1, paragraph 220, announces the rule as follows:

"The general rule also prohibits the attorney from receiving, in the absence of authority from his client, a sum less than that actually due in consideration of his client's claim, especially where it has been previously reduced to the form of judgment or decree the debtor is not injured by being compelled to pay the whole debt, and it has been held that one who undertakes to settle with an attorney for less than the actual debt must, at his peril, ascertain whether the attorney is authorized to make such compromise, the burden being upon him to establish that fact. * * In the absence of authority or ratification, however, the client may recover the full amount of the debt, less the sum paid to his attorney. * * "

In an article by the editor of Corpus Juris, it is said that:

"Except in a few jurisdictions, the general rule is now well settled that an attorney has no power, by mere virtue of his retainer and without express authority, to bind his client by a compromise of a pending suit or other matter intrusted to his care." 6 C. J. 659.

Mr. Justice MOORE, in *Barr* v. *Rader,* 31 Or. 225 (49 Pac. 962), quotes with approval the following:

"The plaintiff's attorney," says Mr. Freeman in his work on Executions (2 ed.), Section 108, "has, by virtue of his general employment in the case, power to direct and control the execution, though he cannot satisfy the writ except upon payment to him of the full amount thereof in money, unless the plaintiff has given him special authority to compromise the debt. * * The burden of proving such special authority is upon the party claiming under it, for it will never be presumed."

In *Fleishman* v. *Meyer,* 46 Or. 267 (80 Pac. 209), this court held that:

"As a general rule, an attorney without special power is not authorized to compromise his client's claim. There is, however, no objection to giving an attorney special authority to compromise, and in rare instances the nature of the business may be such that a power to compromise will be implied, in which cases the act of the attorney in agreeing to the compromise would bind the client: 4 Cyc. 945. Authority to compromise a claim * * will be implied only in the regular course of pending suits and actions when an attorney has neither time nor opportunity to consult with his client, whose interests would be imperiled by delay: *Union Mut. Life Ins. Co.* v. *Buchanan,* 100 Ind. 63; *In re Heath's Will,* 83 Iowa, 215 (48 N. W. 1037); *Brockley* v. *Brockley,* 122 Pa. 1 (15 Atl. 646). The weight of authority in this country supports the rule that an attorney, by virtue of a mere retainer, has no implied power to bind his client by a compromise of his claim: 3 Am. & Eng. Ency. Law (2 ed.), 358; *Barr* v. *Rader,* 31 Or. 225 (49 Pac. 962); *Huston* v. *Mitchell,* 14 Serg. & R. 307 (16 Am. Dec. 506); *Fitch* v. *Scott,* 3 How. (Miss.) 314 (34 Am. Dec. 86); *Holker* v. *Parker,* 7 Cranch, 435 (3 L. Ed. 396); *Preston* v. *Hill,* 50 Cal. 43 (19 Am. Rep. 647)."

The case at bar does not come within any exception to the general rule.

We have already stated that the defendant De Armond, as plaintiff in an action at law, obtained a judgment on January 31, 1918, against Taylor as administrator of the estate of A. A. Brown, deceased, C. E. Belding and others; that immediately after the entry of judgment in that action, the same was docketed according to the provisions of Chapter 15, Title II, Or. L. It is provided by Section 205, Or. L., that:

"From the date of docketing a judgment as in this chapter (XV, Title II) provided, * * such judgment

shall be a lien upon all the real property of the defendant within the county * * where the same is docketed, or which he may afterwards acquire therein, during the time an execution may issue thereon * * ."

5. When the plaintiff acquired title to the land involved herein, R. H. De Armond's judgment was a valid and subsisting lien thereon, and the plaintiff was charged with notice thereof.

This case is affirmed.    AFFIRMED.

BENSON, J., not sitting.