Argued December 7, modified December 28, 1915.
Motion to further modify as to costs denied January 18, 1916.

# PORTLAND *v.* AMERICAN SURETY CO.

### (153 Pac. 786; 154 Pac. 121.)

**Corporations—Authority of Agent to Execute Indemnity for Bonding Company.**

1.   Where the undisputed testimony disclosed the fact that the sole duty of an agent of a foreign corporation was to accept service of process and to act as sales manager, and was never authorized to execute a bond indemnifying a bonding company against loss on a contractor's bond on behalf of or for his principal, *held* that such principal was not liable for the unauthorized acts of said agent in executing the bond of indemnity, especially where the representative of the bonding company had actual knowledge of the agent's authority.

**Principal and Agent—Acts of Agent When Binding on Principal.**

2.   As to third persons, a principal is bound by the acts of his agent, not only when executed in pursuance of actual authority, but also when such acts. are within his apparent authority arising from the manner in which his principal has held him out to the public.

> [As to acts of agent beyond scope of his authority, see note in 6 Am. St. Rep. 37.]

**Principal and Agent—Actual Knowledge of Third Persons as to Authority of Agent.**

3.   Where, however, a third person dealing with an agent has actual knowledge as to the scope of such agent's authority, or when such third party has knowledge of facts which would put him upon inquiry, he cannot then rely upon the apparent authority of such agent.

**Principal and Agent—Party Deals at Own Peril With Agent of Another.**

4.   Section 705, L. O. L., providing that the rights of a party cannot be prejudiced by the declarations, act or omission of another, except by virtue of a particular relation between them, a party deals at his own·peril in transactions with one claiming to be the agent of another.

**Appeal and Error—Rights upon Review of Party not Appealing.**

5.   Upon an appeal from a decree rendered in a suit on a contractor's bond, one of the parties not appealing could not question the correctness of an adjudication in favor of another party not appealing.

**Costs—Allowance of in Equity Proceeding—Discretion of Court.**

6.   The allowance of costs and disbursements in equity cases rests in the discretion of the court.

Costs—Prevailing Party.

7.   Where the appellant was successful on appeal, and was allowed costs against the contractor's surety, the other defendant subcontractors are not entitled to costs against appellant on motion, for the reason that appellant is permitted to share ratably with other claimants in a fund remaining in the hands of the city, and to that extent was a prevailing party against them.

Costs—Adverse Position of Several Claimants on Appeal.

8.   Where, in such appeal, appellant obtained a reversal, with costs against the contractor's surety, the other defendant subcontractors will not be awarded costs against appellant on motion therefor, since, in being allowed participation, he was the prevailing party against them to that extent.   Neither will they be awarded costs against the contractor's surety, since as between them and such surety there was no dispute.

From Multnomah: HENRY E. McGINN, Judge.

Department 1.   Statement by MR. JUSTICE BURNETT.

This is a suit by the City of Portland, on the relation of Van Emon Elevator Company, against American Surety Company, the Title Guaranty & Surety Company and the Western Electric Company, and others.

At the time of the occurrences mentioned in the pleadings herein there was a provision of the city charter of Portland to the effect that contractors on public works for the city should execute a bond payable to the municipality, conditioned not only for the faithful performance of the agreement, but also that the contractor would pay the claims of laborers, materialmen and subcontractors employed by him, and giving those thus entitled to remuneration a right to sue on the bond in the name of the city, making parties of all persons having claims under such security. Bradley & Co., hereinafter called Bradley, took an original contract to erect a building for the city.   The relator, Van Emon Elevator Company, entered into a subcontract with Bradley to install an elevator.   The Western Electric Company, styled for convenience "the Western," furnished to Bradley to be used, and which was used, in the building certain electrical ap-

pliances, amounting to $1,562.93. Other defendants furnished other materials entering into the construction. Acting under the charter provisions mentioned, the Title Guaranty & Surety Company, abbreviated "Title Company," executed for Bradley the contractor's bond required. All this time J. F. Ryan was the sales manager of the Western, which company's principal office on the Pacific Coast was in Seattle. The testimony shows that he had charge of the business of selling its products in Portland. It also appears in evidence that to comply with the law of this state affecting nonresident corporations, it had appointed Ryan its attorney in fact for the sole purpose of receiving service of process upon the company, which was evidenced by a power of attorney filed in the office of the Secretary of State. The original contractor's bond was executed February 27, 1913, and approved on the following day by the acting mayor. On March 6, 1913, the Title Company procured the execution by Ryan in the name of the Western an indemnifying undertaking saving the former harmless from all claims it might have to pay on account of the original contractor's bond not exceeding $5,145. In its suit on the bond on the relation of the elevator company the Western filed its cross-complaint, practically on the same lines of the original complaint, claiming that, as a subcontractor, it had furnished electric materials used in the building, for which it had not been paid, and claimed the benefit of the original contractor's bond. Its claim was contested by the Title Company on the ground that, having given it an indemnifying bond, the Western could not claim the benefit of the contractor's bond on which the Title Company was surety. Upon a hearing the Circuit Court entered a decree against Bradley in favor of all the answering defend-

ants and against him and the Title Company in favor
of all except the Western.   As between it and the Title
Company, the court allowed the former to participate
in the fund yet remaining in the hands of the city only
after the other claims and the Title Company had been
paid, and gave the latter company a decree against the
Western on its indemnifying bond signed by Ryan in
the name of the Western, from which decree the latter
alone has appealed.                       Modified.

Motion to Modify Decree Denied.

For appellant there was a brief over the names of
*Messrs. Moser & McCue* and *Mr. William A. Williams,*
with oral arguments by *Mr. John C. McCue* and *Mr.
Williams.*

For respondent, Title Guaranty & Surety Company,
there was a brief over the name of *Messrs. Kollock &
Zollinger,* with an oral argument by *Mr. John K.
Kollock.*

For respondent, City of Portland, there was a brief
submitted by *Mr. Walter P. La Roche,* City Attorney.

For relator, Van Emon Elevator Company, there
was a brief over the name of *Messrs. Reed & Bell,* with
an oral argument by *Mr. Sanderson Reed.*

For respondent, Westinghouse Pacific Coast Brake
Company, there was a brief submitted over the names
of *Mr. Charles J. Schnabel* and *Mr. J. B. Offner.*

For respondent, A. G. Electric & Mfg. Company,
there was a brief over the name of *Mr. J. A. Beckwith.*

Mr. Justice Burnett delivered the opinion of the
court.

1. The question to be determined is whether or not
Ryan had authority to execute the bond indemnifying

the Title Company. Without a decision we pass the demurrer against the answer of the Title Company. If the bond was indeed a valid obligation of the Western, the decree was right. On the contrary, if it was not binding, the instrument forms no obstacle to the recovery of its claim and to participation in the benefits of the contractor's bond. The undisputed testimony is that the bond signed by Ryan in the name of the Western was taken at the instance of A. Edward Krull, a representative of the Title Company. Ryan, while on the stand, testified as follows:

"Q. Do you remember stating to Mr. Krull that you were going to get·the sale of the electric apparatus for that job if Bradley got the job?

"A. No; not in those words; no.

"Q. But that was it, in substance, wasn't it?

"A. No; when Mr. Bradley was to get his bond for the city, he went to Ted Langford, who was then a friend of Mr. Bradley, and I went down to the bonding company, down to Mr. Burgard's office with him; and at the time they wanted me to go on the bond I told them that I had absolutely no authority to sign a bond.

"Q. Didn't you call up Krull that day?

"A. Yes; I told Bradley and Krull that I didn't have any authority to sign a bond, but that I would do this; that if they would get Mr. Bradley to go ahead and do that job, I would see that the electrical material would be furnished Mr. Bradley so that he wouldn't be held up on the job. * *

"Q. What representation was made when this was signed?

"A. I made the statement to Mr. Krull that I would guarantee delivery of the material for the completion of job, and I specifically told Mr. Krull that I had. no authority for going on the bond, and that my signature on a bond, so. far as my company was concerned, wasn't worth anything. Mr. Krull understood that at the time."

W. L. Bradley testified thus:

"Q. Were you present, Mr. Bradley, at the time, that is, at the time Mr. Ryan just stated this bond was made?

"A. I was.

"Q. Tell the court what was the understanding or agreement, or what conversation was had at that time between Krull and Ryan in your presence as to the bond.

"A. At the time the conversation was between Krull and Ryan and me he says: 'John, I can't go ahead and issue this bond. I don't know whether the party can furnish these goods.' And I asked Ryan to guarantee them, and so Jack says that as others were trying to get the contract: 'I want to get the bond in. If Bradley gets his bond, I will guarantee that he will get his material on the job.' "

Neither Krull nor any other witness in any way disputed the testimony quoted. The excerpts set out above constitute all the evidence on the subject. Thus Krull, representing the Title Company, had actual knowledge of the limitations upon Ryan's authority. According to the deposition of one of the principal officers of the Western, Ryan's sole duty, except to accept service of process, was that of sales manager, and he had never been authorized in any manner whatever to execute any bond on behalf of his principal.

2. The following are legal platitudes: As to third persons a principal is bound by the acts of his agent, not only when executed in pursuance of actual authority, but also within the scope of his apparent authority arising from the manner in which his principal has held him out to the public.

3. Apparent authority and its effect vanish, however, in the presence of the actual knowledge of the third party as to the real scope of the agent's authority, or when the former has knowledge of facts

which would put him upon inquiry as to the actual warrant of the agent.

4. It is Code law that:

"The rights of a party cannot be prejudiced by the declaration, act, or omission of another, except by virtue of a particular relation between them": Section 705, L. O. L.

It has often been held that a party deals at his own peril with one who professes to be the agent of another. In this case the character of sales manager does not give rise to the appearance that such an individual is also a bond giver. The mere fact that the Western had commissioned Ryan to sell its goods does not sanction the supposition that he was empowered to execute an indemnity bond binding his principal. Moreover, it was without any dispute whatever that at the time of signing the bond the representative who was acting in the matter for the Title Company was informed by Ryan that he had no authority to bind his own company in any way by such an instrument. The Title Company was thus forewarned against the liability of the Western, and took the instrument at its own peril.

An effort was made in argument to construe the furnishing of the electrical supplies to Bradley and the execution of the undertaking all as one transaction, but there is nothing in the evidence justifying any such conclusion. The dealing between the contractor and the Western covering the delivery of the electrical supplies was one performance. The execution of the contractor's bond on February 27, 1913, was another, and it was a third affair when Ryan afterward signed the indemnity undertaking on March 6th. The Title Company is in the position of saying to the Western:

"The contractor whose bond we have underwritten may take your goods to the amount mentioned, and not

pay for them, but we will escape liability because we inveigled your salesman into executing an indemnity bond in our favor when we knew he had no authority to do so."

The law does not sanction such a position.

5. In its brief the Title Company endeavors to avoid responsibility for the claim of the elevator company, because there was a bond given by the latter similar in terms to the one imputed to the Western. The Title Company further questions the adjudication in favor of the Westinghouse Pacific Coast Brake Company. Even if they were sound under the pleadings and evidence, we cannot give attention to these arguments, because the Title Company did not appeal from the decree.

It follows that the determination of the Circuit Court should be modified so as to allow the Western a decree, not only against Bradley, but also against the Title Company, with permission to share ratably with other established claims in the fund remaining in the hands of the city.

The decree is changed accordingly    MODIFIED.
MOTION TO MODIFY DECREE DENIED.

MR. CHIEF JUSTICE MOORE, MR. JUSTICE MCBRIDE and MR. JUSTICE BENSON concur.

---

Denied January 18, 1916.

MOTION TO FURTHER MODIFY DECREE.

(154 Pac. 121.)

Department 1.  MR. JUSTICE BURNETT delivered the opinion of the court.

Under a clause of the charter of the City of Portland the relator instituted a suit against a contractor

for the erection of a city building and his surety to recover for materials furnished by it and incorporated in the structure. Other materialmen and subcontractors were made defendants, so that, among other things, their rights to participate in the balance of the contract price remaining unpaid and in possession of the city might be determined and adjusted. The Circuit Court denied relief to the Western Electric Company, a defendant materialman, as against the contractor's surety, the Title Guaranty & Surety Company, and postponed its participation in the city fund until all other claimants were satisfied therefrom. The Western Electric Company appealed, serving notice on all other parties to the suit, secured a reversal of the decree of the Circuit Court, and established its right to participate in the balance unpaid of the contract price and to recover from the contractor's surety. The decree of this court awarded costs and disbursements in favor of the Western Electric Company against the Title Guaranty & Surety Company, but denied such indemnity to all other parties. The defendant Westinghouse Pacific Coast Brake Company now moves for a modification of the decree so as to allow it costs and disbursements against the appellant, Western Electric Company, and the Title Guaranty & Surety Company.

6. Let it first be set down that in equitable proceedings the allowance of costs and disbursements rests in the discretion of the court.

7; 8. As influencing the exercise of this prerogative in this instance, it will be observed that the decree of the Circuit Court in favor of all the claimants except the appellant Western Electric Company excluded the latter from participation in the city fund until the claims of the former were satisfied. In this court this

preference was overturned, and the appellant was admitted to share in the fund like all other claimants. They were proper and necessary parties to the appeal, and the appellant prevailed against them in that respect. This is a sufficient reason for denying any of them costs or disbursements against the appellant. It might properly have been ground for awarding costs against them. There was no dispute in this court between them and the Title Guaranty & Surety Company; hence no equitable ground exists here for giving any of them costs or disbursements against it.

The principal dispute before us was between the Title Company and the Western company, wherein the latter contended for the allowance of its claim against the former which had been wholly denied by the Circuit Court. Having succeeded in establishing its entire demand against the Title Company, it would ill accord with equitable considerations, in the absence of any unusually different conditions, to deny costs in favor of the appellant and against the Title Company. In the adjustment of costs in this court the other claimants fared quite as well as they had any reason to expect and must be content.

The motion is overruled.

MOTION TO MODIFY DECREE DENIED.

MR. CHIEF JUSTICE MOORE, MR. JUSTICE MCBRIDE and MR. JUSTICE BENSON concur.