Argued September 11, affirmed November 27, 1968

# LUMBERMENS MUTUAL CASUALTY COMPANY, *Respondent, v.* JAMIESON, *Defendant,* MESSAL, *Appellant.*

447 P. 2d 384

*Carl R. Neil*, Portland, argued the cause for appellant. With him on the brief were Krause, Lindsay & Nahstoll, Portland.

*James G. Breathouwer*, Portland, argued the cause for respondent. With him on the brief were Seitz, Whipple, Bemis & Breathouwer, Portland.

Before PERRY, Chief Justice, and O'CONNELL, GOOD-WIN, DENECKE and MENGLER, Justices.

DENECKE, J.

The plaintiff insured Boise Cascade Corporation (Boise) under a fidelity bond. Boise has a subsidiary, Ames Harris Neville Company (AHN), which employed the defendant Jamieson. Jamieson sold burlap, the property of AHN, to the defendant Messal. Jamieson converted the payments received from Messal for this burlap to his personal use and plaintiff alleges such defalcations were with the knowledge and participation of Messal. Plaintiff alleges Boise suffered a $16,000 loss from these transactions and plaintiff paid Boise such amount pursuant to the fidelity bond and was subrogated to Boise's rights against Messal. A default judgment was entered against Jamieson and the jury awarded plaintiff the entire amount claimed against the defendant Messal, who appeals.

The first assignment of error concerns the admission into evidence of testimony by the plaintiff's claim manager that the plaintiff paid the claim in the amount of $15,915.50. Defendant objected to this testimony upon the ground that the payment was evidenced by a document and, therefore, the witness's testimony was not the best evidence.

There is no testimony on the form of payment; however, we believe we must assume, as do the parties, that the usual course of business was followed and payment was in the form of a check or draft.

The assignment is bothersome because the "best evidence" rule, both as a common-law principle and as codified in Oregon by ORS 41.610 and 41.640, is an ambiguous principle. 41 Or L Rev 138 (1962). ORS

41.640 provides: "There shall be no evidence of the contents of a writing, other than the writing itself, except: [The exceptions are not applicable.]."

In *Bridenstine v. Gerlinger Motor Car Co.*, 86 Or 411, 421, 168 P 73, 922 (1917), this court stated, without discussion, that in the circumstances of that case a check was the "best evidence." The check in that case, however, was not offered as proof of payment. There, the plaintiff sought damages for fraudulent misrepresentations made by an alleged agent of the defendant. The plaintiff sought to prove the agency relationship by the contents of a check given the purported agent by the defendant.

Wigmore was not certain of the application of the rule:

> "Where the medium of payment is not coin or paper-money, but a *check, note,* or other form of written obligation, the case for requiring production may be more clear * * *; for in paying with money it is usually a mere matter of counting the number of pieces, while in paying with an instrument of obligation the terms of the writing may be of consequence. At any rate, when they do receive any emphasis under the issues, it would seem that the rule of production should apply." 4 Wigmore, Evidence (3d ed), 472, § 1245.

■ We conclude that the facts of payment, the amount paid, and to whom the payment is made can be established without the introduction of the draft or check. These are facts existing independently from any instrument that may have been used in making payment. In a proceeding involving a contract or a deed, what was stated in the instrument is itself the fact in issue and, therefore, subject to the best evi-

dence rule. See McCormick, Evidence, 408, §§ 195-198 (1954).

This was the distinction made in *Bateman v. Donovan*, 131 F2d 759 (9th Cir 1943). That was an action for the breach of a contract to redeem. The defendant contended that in order to redeem he would have had to pay back taxes, in addition to the amount of the note, and this he had not contracted to do. Plaintiff claimed he had paid the taxes; however, the trial court would not allow him to so testify on the ground that plaintiff's oral testimony was not the "best evidence." The appellate court held this was error, stating: "Donovan [the plaintiff] was not trying to prove the contents of a written instrument; he was testifying to the existence of a fact—the payment of the taxes—which would be a matter within his own knowledge." 131 F2d at 763.

Our decision in *Dockery v. Gardner*, 141 Or 64, 15 P2d 481 (1932), although not involving the issue of payment, is in accord. There, the plaintiff timber cruiser brought an action for payment for services against the defendant, who had been engaged by a timber owner to sell timber. The timber owner's bookkeeper testified that all payments made by him for the timber owner to plaintiff had been charged on the timber owner's books to the defendant. Defendant urged that admission of this testimony was contrary to the best evidence rule. We held:

"\* \* \* This contention of defendant is not tenable. The witness was not testifying to the contents of a written instrument, but simply to whose account the items were charged. He was testifying to some fact peculiarly within his knowledge. That, in our opinion, was the best evidence, and the books of account are secondary evidence under such circumstances." 141 Or at 68.

■ Admittedly, the check or draft usually will be more persuasive evidence than oral testimony of payment. The probative value of evidence, however, is customarily left to the determination of the triers of fact. Only in the exceptional circumstances encompassed by the best evidence rule is evidence excluded because it is less probative than other evidence which might be available.

The trial court did not err in permitting the testimony of payment.

■ The defendant contends the trial court erred in denying his motion for a directed verdict upon the ground that there was no evidence that the defendant knowingly participated in the embezzlement of Jamieson.

We hold that there was evidence that Messal participated with Jamieson in the defalcation.

There was evidence that Jamieson sold the burlap to Messal substantially below the market price. There were no invoices prepared or delivered to Messal for most of the approximately 15 sales. At Jamieson's request, Messal initially paid Jamieson in cash. This was inconvenient for Messal and he later paid Jamieson by checks made out to Jamieson personally. When these checks were cancelled and returned to Messal they bore only Jamieson's personal endorsement. Jamieson and Messal both testified that Jamieson told Messal that these methods of payment were necessary because Jamieson's employer did not want to sell to Messal.

From this evidence we conclude that the jury could find that Messal knew Jamieson was using the moneys paid to him by Messal for his personal use and, therefore, Messal would be liable to Jamieson's employer

and its subrogee. Accord, *Esslinger's, Inc. v. London Guarantee and Accident Co.*, 30 FRD 559 (ED Pa 1962).

■ A further ground for the motion for directed verdict was that the plaintiff had not proved its right to subrogation because it had not proved that it had any obligation to make any payments under its policy because AHN was not an assured under the policy.

Plaintiff alleged Jamieson was employed by AHN and Boise and this was admitted by defendant. The policy states the name of the insured is: "BOISE CASCADE CORPORATION AND ITS SUBSIDIARIES AND AFFILIATES * * *. COVERAGE FOR SUBSIDIARIES AND AFFILIATES SHALL APPLY ONLY TO THOSE LEGAL IDENTITIES UNDER WHICH THE NAMED INSURED ASSUMES ACTIVE MANAGEMENT AND EXERCISES FINANCIAL CONTROL, OR WHEN SPECIFICALLY ADDED AS A NAMED INSURED." AHN was never added as a named insured. We find, however, that there was evidence from which it could be found either that AHN was not a separate legal entity or that it was a subsidiary over which Boise had assumed active management and exercised financial control.

An accountant testified that AHN was a division of Boise, not a separate corporate subsidiary. The proof of loss form submitted states that the employer is "Boise Cascade Corporation-Ames Harris Neville Division." The proof was executed by a person designated as Boise's insurance manager. Notice of claim was given by the same person who was described as the secretary-treasurer of both companies. Boise's attorneys handled the claim.

■■ Defendant also urges that the trial court erred in failing to give a requested instruction on the subject of the apparent authority of Jamieson to sell to Messal. The trial court did not err in refusing to so instruct as Messal testified Jamieson had told him his employer had ordered him not to sell to Messal. One cannot rely upon an agent's apparent authority when he knows the agent does not have actual authority. *Berryhill v. Ellett*, 64 F2d 253, 257 (10th Cir 1933).

■ The defendant assigns as error the trial court's failure to define for the jury the phrase "knowingly or willfully participated." This was not necessary. The trial court instructed that Messal was liable if he knowingly or wilfully participated in Jamieson's misconduct, whereas he would not be liable if his participation was negligent or unwitting.

The defendant's final assignment of error directed against the form of verdict is not well taken.

Affirmed.