MINNITI, *Appellant,*
*v.*
CASCADE EMPLOYERS ASSOCIATION,
INC. et al, *Respondents.*
(TC 85064, SC 24822)
570 P2d 1171

M. Chapin Milbank, of Schlegel, Milbank, Wheeler, Jarman & Hilgemann, Salem, argued the cause and filed the brief for appellant.

William B. Wyllie, Salem, argued the cause and filed the brief for respondent Alfred P. Blair.

Edward L. Clark, Jr., of Clark, Marsh & Lindauer, Salem, argued the cause for respondent Cascade Employers Association, Inc. With him on the brief was Ronald J. Williams, Salem.

Before Denecke, Chief Justice, and Tongue, Bryson and Lent, Justices.

TONGUE, J.

## TONGUE, J.

This is an action for damages for breach of a contract entered into by plaintiff and defendant Blair, as manager of defendant Cascade Employers Association, Inc. The case was tried to the court, without a jury.

Plaintiff appeals from the granting of an involuntary nonsuit in favor of Cascade at the conclusion of plaintiff's case based upon a finding that there was not sufficient evidence that Blair had either actual or apparent authority to sign the contract. Plaintiff also appeals from a subsequent judgment in favor of defendant Blair based upon a finding that plaintiff had failed to prove his case against Blair by a preponderance of the evidence.

*The evidence offered by plaintiff on issue of the authority of defendant Blair to enter into the contract with plaintiff.*

Defendant Cascade Employers Association, Inc., is an association of employers organized for the purpose of handling problems of labor relations on behalf of its various employer members. Mr. Blair was the founder of the corporation and its general manager for many years. There was also evidence that Blair, as general manager, had authority to hire and fire employees of Cascade. Mr. Blair was also a recognized expert in the field of labor relations and, as such, represented the Association and its employer members in various matters. One such matter involved the making of arrangements for group life, accident and health insurance and pension plans for employees of employer members of Cascade.

As of January 1, 1961, plaintiff was engaged by defendant Cascade as its insurance broker for all such insurance programs. In a letter confirming that agreement dated January 28, 1961, it was expressly stated that "any commission contracts with any insurance company or companies are to be on a nonvested basis."

That letter was signed by Mr. Blair as secretary-treasurer of Cascade.

Plaintiff testified that at that time he was told by Mr. Blair that he would not give plaintiff a vested contract because of previous problems under such a contract and "until such time as I could prove that I would add business on the books."

In August 1968, after performing since 1961 under that contract, plaintiff prepared a proposed new contract, to become effective September 1, 1968, on a one-page mimeographed form which provided, among other things, that "[c]ommissions and/or fees shall be on a vested basis."[1] Plaintiff testified that he signed that proposed contract on August 31, 1968, and gave it to Mr. Blair for his signature.

Plaintiff testified that at that time Mr. Blair was going to a meeting of the board of directors of Cascade in Portland; that Blair "wanted to take it to the Board"; that plaintiff asked Blair if he would "like me to go to the board meeting with him," but that Blair said that "I should not be present to inhibit any discussion they might want with regard to this contract," and that he "understood it was a matter for discussion and consideration by the board."

Plaintiff also testified that on November 19, 1968, he asked Mr. Blair "what the disposition * * * of this contract had been at the previous board meeting;" that he was then told by Blair that "it was approved," and that Mr. Blair then signed the contract in his presence on that date.

---

[1] As defined by the testimony in this case, the term "vested" commissions or commissions on a "vested basis" have a "special meaning" in the group life, accident and health insurance business described as follows:

"* * * It's a non-forfeitable right that even though you may leave the company, you continue to get paid the commissions on the business that you generated for them because the business is recurring. It's not like selling an automobile where it's sold once and the selling is finished. The business does recur in the insurance business," and "this would be true" even though the insurance agent or broker "rendered no further service to the policy or to the holder of the policy."

Mr. Blair testified, when called by plaintiff as an adverse witness, that when he was later asked by Mr. Burke, his successor, in 1973 about the 1968 contract he had no recollection of ever signing it, but that on November 17, 1968 (the date of his signature), he had asked the office manager to bring in "any papers that may need my signature" and that "numerous papers were brought in, routine matters" which he then signed. He testified, however, that he would not have signed that contract if he had known what he was signing and if his attention had been called to its contents because there had been previous difficulty with another broker over vested commissions and that "anything pertaining to a contractual relationship of this type would have to be approved by the board," not because Mr. Blair had no such authority, but because "it was the way I elected to do it," as "the best way to do business."

In fact, that contract was not then approved by the Cascade board of directors. Plaintiff, however, continued to act as insurance broker for Cascade and also performed other duties as an employee of Cascade until September or October 1972, when he was terminated as an employee, and continued to receive commissions from insurance companies under arrangements previously made by plaintiff directly with them.

There was no evidence that prior to 1973 the Cascade board of directors, or any of its members, knew that plaintiff had a contract providing for commissions on a vested basis. At a directors' meeting in December 1972 reference was made to the fact that plaintiff had a contract "for all insurance matters with Cascade" with a provision for automatic renewal, but there is no evidence that the "vesting" feature of the contract was disclosed to the board or discussed by it at that time.

By that time Mr. Blair was no longer general manager of Cascade. In March 1973 Mr. Burke, the

new manager, was informed by plaintiff that he had a "vested" commission contract. As previously stated, Mr. Burke then talked to Mr. Blair, who at first denied signing any such contract, but later admitted that the signature on the contract was his and said that he must have signed it with other routine papers without knowing what it was.

Mr. Blair also testified that when Mr. Burke told him in 1973 about the 1968 contract he told Mr. Burke that there should be a "Joe Minniti file in the office"; that there was such a file when Mr. Blair left Cascade, but that when they looked for that file in 1973 they could not find it. Mr. Burke also testified that he was unable to find either a signed or unsigned copy of the contract in the files of Cascade.

By letter dated April 9, 1973, plaintiff was informed by Mr. Burke that the contract "shall be terminated in accordance with the terms set forth in the agreement in connection with cancellation of the agreement," as of September 1, 1973. On May 2, 1973, Cascade notified the various insurance companies to stop payment of commissions to plaintiff, which they did. Plaintiff then brought this action for the resulting damage to him.

*There was substantial evidence to support the judgment in favor of defendant Blair.*

We consider first plaintiff's contention that the trial court erred in entering judgment in favor of defendant Blair.

Plaintiff's action against defendant Blair was based upon the following allegation of his complaint:

"Defendant, Alfred P. Blair, at all times material herein was manager and an officer of defendant corporation. Defendant Blair represented to plaintiff that he had the authority to execute Exhibit 'A' herein on behalf of defendant corporation and plaintiff relied upon said representation."

[ 324 ]

Plaintiff's theory of recovery against defendant Blair is stated in his brief as follows:

> "An agent who misrepresented the existence of capacity of his authority may be liable to the other party to a contract made by him on account of the purported principal. * * *"

■ The requirements for an action against an agent for misrepresentation of his authority to make a contract on behalf of his principal are stated in Restatement of Agency 2d § 330 (1958), as follows:

> "A person who tortiously *misrepresents to another that he has authority to make a contract,* conveyance, or representation on behalf of a principal whom he has no power to bind, is subject to liability to the other in an action of tort for *loss caused by reliance* upon such misrepresentation." (Emphasis added)

The trial court, after hearing testimony offered by both parties, made the following finding of fact:

> "* * * [P]laintiff has failed to establish his case by a preponderance of the evidence * * *."

■ Plaintiff contends that there was no substantial evidence to support such a judgment based upon such a finding because the admitted signature of defendant Blair upon the 1968 contract was of itself a representation that he had authority to do so, thereby raising statutory presumptions under ORS 41.350(3) and (4) which were not overcome by Blair's testimony claiming that he was acting under mistake when he signed the contract.[2]

We do not believe that either ORS 41.350(3) or (4) is controlling in this case. The 1968 contract, by its

---

[2]ORS 41.350(3) and (4) include the following as conclusive presumptions:

"(3) The truth of the facts *recited from the recital in a written instrument,* between the parties thereto, their representatives or successors in interest by a subsequent title; but this rule does not apply to the recital of a consideration.

"(4) Whenever a party has, by his own declaration, act or omission, *intentionally and deliberately led another to believe a particular thing true,* and to act upon such belief, he shall not, in any litigation arising out of such declaration, act or omission, be permitted to falsify it." (Emphasis added)

[ 325 ]

terms, does not include a "recital" of any representation by Blair that he was authorized to sign that contract. Neither is the evidence conclusive that Blair "intentionally and deliberately led [plaintiff] to believe" that he had authority to do so.

It may be that Blair's signature on the 1968 contract as general manager was sufficent evidence to support a finding that he thereby represented to plaintiff that he had authority to do so, if uncontradicted. But there was also evidence from which the trial court could have properly found that Blair made no representation that he had authority to sign the contract.

Thus, plaintiff admitted that when he first asked Blair to sign the contract, he was told that Blair wanted to take it to the board of directors and that plaintiff "understood that it was a matter for discussion and consideration by the board." Although plaintiff testified that Blair later told him that the contract had been approved by the board and then signed this contract, Blair testified that he had no such conversation with plaintiff and that although he later signed the contract (a one-page mimeographed sheet), he must have signed it with other routine papers without knowing what it was.

Moreover, the evidence is also by no means conclusive to establish the second essential allegation of plaintiff's complaint insofar as it seeks recovery against defendant Blair, i.e., that "plaintiff relied upon said representation." Indeed, the evidence on the issue of reliance was in conflict.

Again, plaintiff admitted that when he first tendered the proposed contract to Mr. Blair he was told that Blair "wanted to take it to the Board" and "understood it was a matter for discussion and consideration by the Board." Plaintiff testified further, however, that after a subsequent meeting of the board of directors he asked Mr. Blair "what the disposition * * * of this contract had been" at that meeting; that

he was then told by Blair that "it was approved," and that it was then that Blair signed the contract. Again, if this testimony had been uncontradicted, the trial court might have been required to find that plaintiff had a right to rely upon the statement by Blair that the contract had been approved by the board, and accordingly, upon his signing the contract at that time as a representation that he had authority to do so.

As previously stated, however, Blair did not admit telling plaintiff that the contract had been approved by the board. Instead, he testified to the effect that his signing of the contract was a mistake in that the contract was included with other routine papers when presented for his signature and that he would not have signed it if he had known of its contents.

On this state of the record, the trial court could have disbelieved plaintiff's testimony that Blair told him that the contract had been approved by the board of directors and believed Blair's testimony to the contrary. As a result, the trial court could have properly found that plaintiff failed to establish by a preponderance of the evidence both of the essential allegations of his complaint against defendant Blair, i.e., (1) that defendant Blair represented that he had authority to sign the contract and (2) that "plaintiff relied upon said representation." It follows, in our opinion, that there was substantial evidence to support the judgment of the trial court in favor of defendant Blair.

*The entry of judgment in favor of defendant Blair is a bar to further proceedings by plaintiff against defendant Cascade Employers Association, Inc.*

We next consider plaintiff's contention that the trial court erred in entering a judgment of involuntary nonsuit in favor of defendant Cascade at the conclusion of plaintiff's case. In response, defendant Cascade contends that even if it was not entitled to a judgment of involuntary nonsuit at the conclusion of plaintiff's case, the subsequent entry of a judgment in favor of

[ 327 ]

defendant Blair, its agent, operates as a bar against further proceedings by plaintiff against defendant Cascade.

Defendant relies upon the following rule as stated in Seavey on Agency 135-36, § 81 (Hornbook Series 1964):

"If the sole basis for the principal's liability is the transaction of the agent, and it is found in the action between the agent and the other party that there was no breach of contract or that no cause of action existed, the principal's liability is discharged. In fact it is generally held that any judgment on the merits in favor of either principal or agent, where the principal's liability is based solely upon the agent's conduct, bars action against the other. * * *."

Unfortunately, plaintiff did not file a reply brief on this appeal, with the result that we do not have the benefit of the assistance of plaintiff's attorney in the consideration of this contention by defendant Cascade.

■ Although we recognize that the rule relied upon by defendant Cascade is not strictly a rule of collateral estoppel, we nevertheless believe that in determining whether the judgment in favor of defendant Blair should be held to be a bar against further proceedings against defendant Cascade, it is useful, at least by way of analogy, to consider the requirement of the rule of collateral estoppel, as adopted by this court, to the effect that in order for a judgment in favor of a defendant to operate as a bar in a subsequent action involving the same plaintiff, but a different defendant, there must exist an identity of issue between the prior action and the subsequent action. *Bahler v. Fletcher,* 257 Or 1, 19-20, 474 P2d 329 (1970).

As previously stated, plaintiff's case against defendant Blair rested exclusively upon the allegation of his complaint that Blair had represented that he had authority to sign the 1968 contract and that plaintiff relied upon that representation and the judgment in favor of Blair was based upon the express

finding that plaintiff had failed to establish these allegations by a preponderance of the evidence.

It is also important to note that the plaintiff in his action against Cascade makes no contention that Mr. Blair had express authority to sign the 1968 contract. Instead, plaintiff's contention is that Blair had apparent authority to do so.[3]

As stated in Seavey on Agency, *supra,* § 8D (at 13):
"* * * [A]pparent authority results from conduct by the principal which causes a third person reasonably to believe that a particular person, who may or may not be the principal's agent, has authority to enter into negotiations or to make representations as his agent. * * *."

See also Restatement of Agency 2d 103, § 27 (1958), and the statement in Comment *c* that:
"* * * The third person must believe the agent to be authorized."

■ On the other hand, it is well established that one cannot rely upon an agent's apparent authority when he knows that the agent does not have actual authority or had knowledge of facts which would put him on inquiry as to the actual authority of the agent. *Portland v. American Surety Co.,* 79 Or 38, 43-44, 153 P 786, 154 P 121 (1915). *See also Lumbermens Mut. Cas. v. Jamieson,* 251 Or 608, 615, 447 P2d 384 (1968).

We recognize that in order for the judgment in favor of Blair, the agent, to operate as a bar against further proceedings against Cascade, the principal, there must have been no possible basis for the judgment in favor of Blair other than one that was necessarily resolved adversely to the plaintiff upon an issue which is also present and controlling in plaintiff's action against Cascade, In *Burnett v. Western*

---

[3]Plaintiff also contends in its action against defendant Cascade, and as an additional ground for liability, that Cascade subsequently ratified the 1968 contract. That contention remains to be discussed separately.

[ 329 ]

*Pac. Ins. Co.,* 255 Or 547, 556, 469 P2d 602 (1970) (although a collateral estoppel case), we held that:

> "In making the determination whether certain facts were adjudicated in the first case, it is proper, and often necessary, to examine the evidence presented in that case and not merely the judgment order and pleadings. * * *"

■ Before again considering the record and evidence in plaintiff's action against defendant Blair, we consider the evidence offered by plaintiff against defendant Cascade in support of his contention that Blair had apparent authority to sign the 1968 contract on behalf of Cascade. Upon reviewing the evidence offered by plaintiff in support of that contention we find that plaintiff admitted his understanding that the 1968 contract would have to be approved by the Cascade board of directors. Standing alone, it would follow from that admission, as a matter of law, that plaintiff could not rely upon a claim that Blair had apparent authority to sign the contract, under the rule of *Portland v. American Surety Co., supra.*

The only basis upon which plaintiff could overcome the effect of that admission was by his testimony that Mr. Blair later told him that the 1968 contract had been approved by the board of directors, so as to then entitle him to again rely upon the apparent authority of Mr. Blair, as general manager of Cascade, in then signing that contract. As previously noted, however, that testimony by plaintiff was in conflict with the testimony by Mr. Blair, which was to the effect that he had no such conversation with plaintiff.

Thus, plaintiff's case against defendant Cascade depends upon a resolution in his favor of the conflict in testimony on that issue of fact (except for the possible issue of ratification, to be considered separately). Plaintiff contends, in effect, that he is entitled to have that issue of fact resolved by the trier of the facts and that it was error for the trial court to allow the motion by defendant for an involuntary nonsuit and to thereby refuse to resolve that issue of fact.

If, however, that same issue of fact was necessarily resolved adversely to plaintiff by the findings of the trial court at the conclusion of the trial of plaintiff's case against defendant Blair, it would follow that the judgment in favor of defendant Blair must operate as a bar in favor of defendant Cascade (except for the issue of ratification, to be considered separately).

At the conclusion of the trial of plaintiff's action against defendant Blair the trial court found that plaintiff failed to establish the necessary allegations of his complaint that Blair represented to plaintiff that he had authority to sign the contract and that plaintiff "relied upon" the alleged representation by Blair that he was authorized to sign the 1968 contract. In making that finding, and for reasons previously stated, the trial court necessarily disbelieved and rejected plaintiff's testimony that he was told by Blair that the contract had been approved by the board of directors.

■ It follows, in our opinion, that the judgment in favor of defendant Blair, the agent, based as it was upon such a finding, must operate as a bar against further proceedings against defendant Cascade, as Blair's principal, insofar as such proceedings are based upon the plaintiff's contention that Cascade is liable to plaintiff because Blair, its agent, had apparent authority to sign the 1968 contract.

We must still consider plaintiff's further contention that defendant Cascade is liable to plaintiff for breach of the 1968 contract upon the ground that it subsequently ratified that contract—an independent basis of liability. *See* Restatement of Judgments 494, § 99, Comment *b* (1942). If plaintiff offered any substantial evidence to support recovery by plaintiff on the basis of a ratification of the 1968 contract by Cascade, it would have been error for the trial court to grant an involuntary nonsuit in favor of Cascade.

[ 331 ]

*Plaintiff failed to offer substantial evidence of ratification.*

We have reviewed the record on the question of ratification and find that plaintiff failed to offer any substantial evidence to support such a finding.

■ In order to constitute ratification by a principal of a previously unauthorized contract by an agent, there must be evidence from which a jury could properly find that the principal, with knowledge of the material facts, intended to ratify the contract. *Alldrin v. Lucas,* 260 Or 373, 381, 490 P2d 141 (1971). There was no evidence that the Cascade board of directors was aware of the 1968 contract with plaintiff until December 1972 and even then there is no evidence that it was informed of the "vested commission" provisions of that contract. Not until March 1973 was Mr. Burke, the new Cascade manager, informed by plaintiff that he had a contract with such provisions. He then promptly terminated the contract.

■ Plaintiff contends that Cascade then ratified the contract because its letter to plaintiff stated that the contract would be terminated in accordance with its provisions for termination. We hold, to the contrary, that when a principal is first informed of the existence of an unauthorized contract and then proceeds promptly to terminate such a contract, the fact that he does so in accordance with its provisions for termination cannot properly be regarded as evidence of an intent to ratify the contract.

For all of these reasons, we hold that the judgments in favor of both defendant Blair and defendant Cascade must be affirmed.