Argued and submitted February 27, resubmitted
in banc July 17, reversed and remanded July 21,
reconsideration denied September 4,
petition for review denied November 20, 1980 (290 Or 157)

POLSFOOT, et ux,
*Appellants,*

*v.*

TRANSAMERICA TITLE INSURANCE COMPANY,
*Respondent.*

(No. 78-7932, CA 15027)

614 P2d 1173

Susan L. Burgott, Eugene, argued the cause for appellants. With her on the briefs were Lewis Hoffman, and Hoffman, Morris, Van Rysselberghe & Giustina, Eugene.

Janice M. Stewart, Portland, argued the cause and filed the brief for respondent.

JOSEPH, J.

Campbell, J., dissenting opinion.

**JOSEPH, J.**

■ Plaintiffs brought an action at law for damages, alleging in separate causes of action that defendant had breached its contract of title insurance by refusing to pay a loss, had failed to defend plaintiffs' title under that contract and had been negligent in searching the title and issuing the insurance. They appeal from a summary judgment for defendant dismissing their complaint.[1]

Plaintiffs, as purchasers, and Wanda Jean Johnson executed an earnest money agreement for property located in a subdivision in Lane County. The property was described as "A Part of 17-05-02-21 Tax Lot #100 including home and 3/4 acres more or less." Subsequently Wanda Jean Johnson, or her attorney, requested defendant to issue a contract of title insurance, which she was obligated to furnish plaintiffs under the earnest money agreement. The property description was provided by her attorney; it described the property by reference to a plat. The same description was incorporated in the land sale contract between plaintiffs and Wanda Jean Johnson.

Defendant issued a title insurance policy, under the terms of which plaintiffs were the "insured," and the fee simple title was shown as vested in Robert L. Foster and Helen M. Foster, as tenants by the entirety. The property description in the policy was the same one furnished by the attorney. Defendant insured the title to the property in the owners of record as of the date of the policy, excepting only those things excluded from coverage in Schedule B of the policy or under the policy conditions and stipulations.

---

[1] Plaintiffs also assert that the trial court erred in denying their motion for summary judgment. Once again it is necessary to point out that an order denying a summary judgment is not a final order under ORS 19.010 and is *not*, repeat *not*, appealable. *Hoy v. Jackson,* 26 Or App 895, 554 P2d 561, *rev den* (1976).

The marriage of Wanda Jean Johnson and James Johnson had recently been dissolved. Under that decree, which was of record in Lane County, their real property interests were divided, and part of the property described in the contract and in the policy had been awarded to James Johnson. The Johnsons had been purchasing under a contract from the Fosters. That contract was unrecorded, so the public records did not show any title or claim of title in either Wanda Jean Johnson or James Johnson, other than in the dissolution decree. The policy contained no reference to that decree.

James Johnson claimed (and fenced off) a portion of the property, and a dispute arose between the parties as to the actual area and boundaries of the property that was sold. Plaintiffs brought an ejectment action against both of the Johnsons; the Johnsons countersued for reformation on the ground of mutual mistake. Defendant had been notified when Mr. Johnson first asserted his claim and also as the litigation developed, including the countersuit for reformation. It denied coverage, refused to take action to clear plaintiffs' title and refused to defend the title.

In that litigation the court ruled that James Johnson was entitled to the disputed area. The court found that there had been a clear delineation of the boundary that was intended to be conveyed, that the plaintiffs had made their own measurement of the property prior to the purchase and that mutual mistake of the parties caused errors in the description of the property. The decree ordered reformation of the land sale contract to conform to the intent of the parties. No appeal was taken. This action ensued.

Although the court below did not issue a written opinion, and the order and judgment do not recite the reasons why a summary judgment was granted, the transcription of the argument on plaintiffs' motion to reconsider the allowance of the summary judgment shows that the court determined that the decree for

reformation on the Johnsons' countersuit had the effect of collaterally estopping plaintiffs from claiming that defendant had insured them against the defect in title arising out of Mr. Johnson's claim. Defendant's brief in this court relies mainly on the collateral effect of the reformation to support the summary judgment. We hold that the trial court was in error, and we reverse and remand.

The relevant terms of the policy are set out in the margin.[2]

---

[2] "Transamerica Title Insurance Company

"*** [F]or a valuable consideration *** does hereby insure the parties named as Insured *** against direct loss or damage *** together with costs, attorney's fees and expense which the Company may be obligated to pay *** which the Insured shall sustain by reason of:

"1. Title to the land described in Schedule A being vested, at the date hereof, otherwise than as herein stated; or

"2. Unmarketability, at the date hereof, of the title to said land of any vestee named herein, unless such unmarketability exists because of defects, liens, encumbrances, or other matters shown or referred to in Schedule B; or

"3. Any defect in, or lien or encumbrance on, said title existing at the date hereof, not shown or referred to in Schedule B, or excluded from coverage in the Schedule of Exclusions from Coverage; or

"* * * * *

"all subject, however, to the Schedule of Exclusions from Coverage and the Conditions and Stipulations hereto annexed, which, together with Schedules A and B are hereby made a part of this policy.

"* * * * *

"SCHEDULE OF EXCLUSIONS FROM COVERAGE

"This policy does not insure against loss or damage by reason of the following:

"* * * * *

"4. Defects, liens, encumbrances adverse claims against the title as insured or other matters (1) created, suffered, assumed or agreed by the Insured claiming loss of damage; or (2) known to the Insured Claimant either at the date of this policy or at the date the Insured Claimant acquired an estate or interest insured by this policy and not shown by the public records, unless disclosure thereof in writing by the Insured shall have been made to the Company prior to the date of this policy; or (3) resulting in no loss to the insured Claimant; or (4) attaching or created subsequent to the date hereof.

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

"* * * * * ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

"CONDITIONS AND STIPULATIONS

"1. DEFINITION OF TERMS

"The following terms when used in this policy mean:

"(b) 'public records': those records which impart constructive notice of matters relating to said land;

"* * * * *

"(f) 'insured': the party or parties named as Insured, ***.

"* * * * *

"3. DEFENSE AND PROSECUTION OF ACTIONS — NOTICE OF CLAIM TO BE GIVEN BY THE INSURED

"(a) The Company, at its own cost and without undue delay shall provide (1) for the defense of the Insured in all litigation consisting of actions or proceedings commenced against the Insured, or defenses, restraining orders, or injunctions interposed against a foreclosure or sale of the mortgage and indebtedness covered by this policy or a sale of the estate or interest in said land, or (2) for such action as may be appropriate to establish the title of the estate or interest or the lien of the mortgage as insured, which litigation or action in any of such events is founded upon an alleged defect, lien or encumbrance insured against by this policy, and may pursue any litigation to final determination in the court of last resort.

"* * * * *

"(c) The Company shall have the right at its own cost to institute and prosecute any action or proceeding or do any other act which in its opinion may be necessary or desirable to establish the title of the estate or interest or the lien of the mortgage as insured; and the company may take any appropriate action under the terms of this policy whether or not it shall be liable thereunder and shall not thereby concede liability or waive any provision of this policy.

"* * * * *

"6. PAYMENT OF LOSS

"(a) The liability of the Company under this policy shall in no case exceed, in all, the actual loss of the Insured and costs and attorneys' fees which the Company may be obligated hereunder to pay.

"(b) The Company will pay, in addition to any loss insured against by this policy, all costs imposed upon the Insured in litigation carried on by the Company for the Insured, and all costs and attorneys' fees in litigation carried on by the Insured with the written authorization of the Company.

"(c) No claim for damages shall arise or be maintainable under this policy (1) if the Company, after having received notice of an

alleged defect, lien or encumbrance not excepted or excluded herein removes such defect, lien or encumbrance within a reasonable time after receipt of such notice, or (2) for liability voluntarily assumed by the Insured in settling any claim or suit without written consent of the Company, or (3) in the event the title is rejected as unmarketable because of a defect, lien or encumbrance not excepted or excluded in this policy, until there has been a final determination by a court of competent jurisdiction sustaining such rejection.

"* * * * *

"SCHEDULE A

"INSURED

"CURTIS F. POLSFOOT and ELIZABETH J. POLSFOOT

"The fee simple title to said land is, at the date hereof, vested in

"ROBERT L. FOSTER and HELEN M. FOSTER, as tenants by the entirety.

"The land referred to in this policy is described as:

"See enclosed Exhibit 'A'.

[Exhibit 'A' is the property description.]

"SCHEDULE B

"This policy does not insure against loss or damage, nor against costs, attorney's fees or expenses, any or all of which arise by reason of the matters shown or referred to in this Schedule except to the extent that the owner of any mortgage or deed of trust is expressly insured on page 1 of this policy.

"Part I

"* * * * *

"2. Any facts, rights, interests, or claims which are not shown by the public records but which could be ascertained by an inspection of said land or by making inquiry of persons in possession thereof.

"* * * * *

"4. Discrepancies, conflicts in boundary lines, shortage in area, encroachments or any other facts which a correct survey would disclose.

"PART II: Liens, encumbrances, defects and other matters affecting title to said land or to which said title is subject, as hereinafter set forth:

"* * * * *

"3. Unrecorded contract, including the terms and provisions thereof, and such other exceptions as may appear necessary upon the recording thereof,

■ The action brought by these plaintiffs against the Johnsons put in issue who was entitled to possession of the disputed area; the countersuit put in issue the intention of the parties to the real property sales transaction. The plaintiffs' action was incontestably an appropriate way to test the challenge to their rights in the disputed land, even though ejectment does not try title. *Buschman v. Paull,* 278 Or 141, 563 P2d 1197 (1977). The Johnson countersuit was a direct challenge to plaintiffs' rights under the written agreement by which they claimed an interest. Both the action and the countersuit were within the title insurer's obligations under the policy's insuring clause and paragraphs 3(a) and (c) *if* the plaintiffs' title to the land was insured and the challenge to that title was not subject to a policy exclusion. These plaintiffs were the named insureds, and the fee simple title was insured to be vested in the Fosters, subject only to the policy's standard exclusions, the general exclusions in PART I of Schedule B and "Liens, encumbrances, defects and other matters affecting title to said land or to which said title is subject" specifically stated in PART II of Schedule B.

The trial court held that plaintiffs were barred by collateral estoppel. The *Polsfoot v. Johnson* case had resulted in a decision that the Polsfoots had not intended to buy and Mrs. Johnson had not intended to sell more than what Mrs. Johnson had the power to give a good title to. Therefore, according to the court below, the issue of what the plaintiffs here (through

"Dated : March 9, 1977

"Vendor : Wanda Jean Johnson, a single woman

"Vendee : Curtis F. Polsfoot and Elizabeth J. Polsfoot, husband and wife

"as disclosed by Memorandum of Contract

"Recorded : March 10, 1977 Reception No. 77-13454

"* * * * *."

Mrs. Johnson's action in procuring title insurance pursuant to the earnest money agreement) intended to have insured was determined in the earlier action and could not be relitigated.

Conceivably, if the title insurer had sought reformation of the insurance contract, or if fraud by the plaintiffs were claimed, the application of collateral estoppel might have been appropriate. That is not this case. Here the insurer asserts that it was not obligated under *its* contract because the plaintiffs could not have intended to insure more than they intended to buy and the insurer could not have intended to insure more than they intended to buy.[3] Application of the intent determined in the *Polsfoot v. Johnson* litigation to determine the intent in the procuring of title insurance was a misapplication of collateral estoppel. At the time the insurance policy was purchased, plaintiffs thought they were purchasing the land as it was described in the land sale contract. The fact that the description in that contract was the product of a mutual mistake, and that it was subsequently reformed, is irrelevant to the intent of the parties under the title insurance policy. The issue of the plaintiffs' and Mrs. Johnson's intent is not decisive of the intent of the parties in the procuring of the insurance contract. *Bahler v. Fletcher,* 257 Or 1, 20, 474 P2d 329 (1970).

■ The parties' "mistake" in the land sale contract was in thinking the description was accurate. To give the title insurance company a collateral benefit from that mistake suggests that in every instance where there is a mistake between the parties to the property transaction which would support reformation

---

[3] We note that had the defendant's title search process revealed the recorded Johnson dissolution decree, it presumably would have been reported in a preliminary title report (and would thus have alerted the plaintiffs to the description problem) and would have been shown in PART II of Schedule B. Defendant asserts in its brief that it had no duty to search beyond the "chain of title." That ignores the "unmarketability" and "any defect" clauses in the insuring agreement, *supra,* note 2.

the insurer can escape its contractual duties. Such a retrospective assessment of the insurer's duties amounts to writing a new insurance contract[4] and reflects an improper use of collateral estoppel.

■ The insurer insured that the title to the described piece of property was as it said it was. As it turned out, the title was not what the insurance policy said it was. When the challenge arose, so did the defendant's contractual duties — unless those duties were conditioned somehow in the contract. Defendant argues, quoting its brief:

> "The fact that plaintiffs were mutually mistaken as to the description of the property is fatal to recovery in the present action against the insurer. Mutual mistake is not a factual circumstance within the coverage of the title insurance policy. As a circumstance created, albeit innocently, by the insured, it is expressly excluded from policy coverage. Consequently, defendant had no duty to defend. That is, defendant claims that the reformation was within the terms of paragraph 4 of the SCHEDULE OF EXCLUSIONS: 'Defects, *** encumbrances, adverse claims or other matters (1) created, suffered, assumed or agreed to by the Insured ***.' "

We have not been referred to nor have we found any authority interpreting the clause referred to in that passage, but we do not believe its meaning is difficult to determine in this context. One of the things insured against was that someone would claim an interest contrary to the vesting of the title as insured. That was what Mr. Johnson did. In no way did these plaintiffs create his interest.

■ Finally, defendant asserts that because "plaintiffs received exactly what they intended and agreed to purchase [from Mrs. Johnson], they suffered no loss." All that needs be said about that contention is

---

[4] *See* the analysis of a title insurer's duties in a different but somewhat analogous context in *Jarchow v. Transamerica Title Ins. Co.,* 48 Cal App 3d 917, 941-944, 122 Cal Rptr 470 (1975).

that, at the least, plaintiffs incurred the expenses of defending their interests under the land sale contract. That was the sort of loss the policy expressly insured against, and it was an element of their claimed damages asserted in each of their causes of action. All we decide now is that it was error for the trial court to hold that defendant, as a matter of law, had no contractual duty to pay a covered loss, no duty of due care in searching the title and no duty to defend plaintiffs' title. None of those issues were, or could have been, resolved in resolving the Johnsons' claim of mistake.

Reversed and remanded.

**CAMPBELL, J.,** dissenting.

In the plaintiffs' first and third cause of actions[1] they seek to recover the sum of approximately $30,000 for the alleged loss of and the loss of use of real property. The majority, by reversing and remanding this case, give the plaintiffs the opportunity to recover damages from the defendant for a defect of title created and known by the plaintiffs and excluded from coverage under the title policy. The majority's error is compounded by their giving the plaintiffs' a second bite at the apple.

In June 1976 a decree was entered dissolving the marriage of James M. Johnson and Wanda Jean Johnson. The decree divided the real property of the parties. In March 1977 the plaintiffs contracted to purchase a tract of land from Wanda Jean Johnson. Thereafter, the defendant issued a title insurance policy on the legal description contained in the contract of sale between Wanda Jean Johnson and the plaintiffs. James M. Johnson fenced a portion of the land described in the title policy. The defendant was notified

---

[1] The plaintiffs' complaint confuses and intermingles "counts" and "causes of action." The second cause of action seeks to recover approximately $3,250 for litigation expenses and attorney fees in the prior case. This same sum of $3,250 is also included in each of the first and third causes of action. However, the main thrust of the first and third causes is to recover damages for the loss of and loss of use of real property.

of the James M. Johnson claim. The plaintiffs filed an ejectment action seeking possession of the land which James M. Johnson had fenced. Both Johnsons filed a countersuit seeking to have the legal description of the land in the contract between the plaintiffs and Wanda Jean Johnson reformed on the basis of mutual mistake. The defendant refused the tender of the defense of the countersuit for reformation. The trial court reformed the description of the land in the plaintiffs' purchase contract to exclude the land awarded to James M. Johnson in the dissolution decree, finding:

> " 'That the parties labored under a mutual mistake as to the description of the real property intended to be sold and purchased by the respective parties and that the error in the description contained in the Land Sale Contract was that of the scrivener.' "

The plaintiffs did not appeal from the decree in the reformation suit.

The plaintiffs then filed this action against the defendant on the title insurance policy. The defendant answered that the plaintiffs' claims were not covered under the terms of the title insurance policy. The trial court granted the defendant a summary judgment.

The defendant contends, and the trial court agreed, that the doctrine of collateral estoppel applies to the plaintiffs' claim for damages for the loss of property. I agree. The plaintiffs are attempting to relitigate issues already adjudicated. *Minniti v. Cascade Employers Association, Inc.,* 280 Or 319, 570 P2d 1171 (1977); *In re Gygi,* 273 Or 443, 447, 541 P2d 1392 (1975);[2] *Bahler v. Fletcher,* 257 Or 1, 474 P2d 329 (1970).

---

[2] "The doctrine of collateral estoppel acts as a restraint on the relitigation of issues already adjudicated. It proceeds upon the premise that, in the absence of a showing of actual unfairness, one who has had a full, complete and fair opportunity to litigate an issue upon which his rights depend, and has lost, need not be granted a second opportunity to contest that issue." *In re Gygi, supra,* at 447.

The plaintiffs in this case are seeking to collect damages for the loss of and loss of use of the identical property for which they sought possession in the prior case and which the trial judge said they never intended to buy. The plaintiffs are attempting to bootstrap themselves into court from an adverse ruling in the *Polsfoot v. Johnson* case.

In the plaintiffs' second cause of action they seek to recover the sum of approximately $3,250 for litigation expenses and attorney's fees in the prior case.

The duty to defend is covered by the terms of the title insurance policy, which provides:

> "The Company, at its own cost and without undue delay shall provide * * * for the defense of the Insured in all litigation * * * which litigation * * * is founded upon any alleged defect * * * *insured against by this policy* * * *." (emphasis supplied)

The schedule of exclusions from coverage of the title insurance policy provides:

> "This policy *does not insure against* loss or damage by reason of the following:
>
> "Defects, liens, encumbrances, adverse claims against the title as insured or other matters (1) created, suffered, assumed or agreed to by the insured * * * or (2) known to the Insured Claimant * * * or (3) resulting in no loss to the Insured Claimant * * * ." (emphasis supplied)

The insurer's obligation to defend any given case depends on whether the allegations of the complaint allege a cause of action within the coverage of the policy. *Crist v. Potomac Ins. Co.,* 243 Or 254, 413 P2d 407 (1966); *Blohm v. Glen Falls Ins. Co.,* 231 Or 410, 373 P2d 412 (1962).

The countersuit in the prior case filed by the Johnsons alleged mutual mistake and prayed that the contract be reformed. This mutual mistake was necessarily by definition *created by* the plaintiffs and,

[273]

therefore, was a *defect* not covered by the title policy. Under exemption "(1)" of the policy, there was no duty by the defendant to defend.

When the defendant title insurance company received the copy of the countersuit for reformation it was entitled to conclude that the plaintiffs could suffer no loss. If the suit for reformation was correct and the legal description did not accurately describe the property intended to be sold due to a mutual mistake, the plaintiffs would receive what they originally bargained to buy. If on the other hand there was no mutual mistake, the plaintiffs would receive the entire property described in the title policy. Thus, the defect would be one falling within exemption "(3)" to the title policy. The alleged defect or claim was outside the policy coverage and, therefore, the defendant had no duty to defend.

I dissent for the above reasons. I would affirm the trial court.

SCHWAB, C.J., and GILLETTE, J., join in this dissent.