Argued at Pendleton November 1; reversed December 6, 1938

# GALBRAITH ET AL. *v.* MONARCH GOLD DREDGING CO.

### (84 P. (2d) 1110)

*A. A. Smith,* of Baker (Heilner, Smith, Grant & Fuchs, of Baker, on the brief), for appellants.

*Forrest L. Hubbard,* of Baker, for respondents.

BAILEY, J.   The circuit court on May 24, 1938, upon the written consent of the attorney for defendant entered judgment in favor of the plaintiffs, John W. Galbraith and Eliza Ray Galbraith, and against the defendant, Monarch Gold Dredging Company, in the sum of $4,751.73, together with interest thereon at 6

per cent per annum from December 3, 1936, and the further sum of $474.41 as costs, being the full amount asked by the plaintiffs in their complaint. Thereafter, on June 24, 1938, the defendant filed a motion to have the judgment set aside on the ground that the defendant's attorney had no authority to consent to it. This motion was denied by the court, with permission to the defendant to file a motion to vacate said judgment pursuant to the provisions of § 1-907, Oregon Code 1930, on the ground that the said judgment was taken against the defendant through its mistake, inadvertence, surprise or excusable neglect.

Thereupon the defendant filed a new motion to have the judgment set aside, on two grounds, towit: that the attorney for the defendant had no authority to consent to the entry of such judgment, and that at the time of stipulating consent to the entry thereof the then attorney for the defendant was of the opinion that such consent did not preclude an appeal to the supreme court. This motion also was denied by the circuit court.

In its notice of appeal to this court the defendant recites that it is appealing from the original judgment and from the orders of the circuit court denying its motions to have the said judgment set aside.

In May, 1934, the plaintiffs and one Marian E. Galbraith, owners of land in Grant county, entered into a contract with Howard Investment Company for the sale by the plaintiffs to that company of certain described lands or so much thereof as the said investment company might desire to use for dredging purposes. Before any dredging operations by the investment company were commenced, that company sold and transferred its interest in the contract to the defendant in this case, and the plaintiffs herein succeeded to all interest that Marian E. Galbraith had in the contract.

The price to be paid for the lands taken for dredging purposes was $300 an acre. According to the allegations of the complaint, the defendant dredged 43.411 acres of land, the purchase price of which as specified in the contract would amount to $13,023.30, of which sum only $8,271.57 had been paid. The amount awarded by the judgment represented the difference between the above amounts.

A copy of the contract is attached to the complaint as an exhibit. In it is a provision for arbitration in the event of "differences of opinion or construction arising" out of the said contract.

The defendant demurred to the complaint, claiming that the action should abate until the matters in dispute had been arbitrated, and on the further ground that the complaint failed to state facts constituting a cause of action. This demurrer was overruled.

Thereupon the defendant filed its answer, in which it denied that the defendant had dredged more than 39.073 acres of land and further denied that the total amount which the defendant was to pay plaintiffs was in excess of $11,730. The answer affirmatively alleged that the defendant had paid to the plaintiffs the sum of $9,271.59, leaving the defendant indebted to the plaintiffs in an amount not exceeding $2,458.41.

Two affirmative defenses are set forth in the defendant's answer, the first of which is a plea in abatement to the effect that the contract provided that any differences between the defendant and the plaintiffs should first be settled by arbitration, and that (1) the amount of acreage dredged by the defendant had not been determined by arbitration and (2) the defendant had deposited with plaintiffs $1,000, which money was agreed to be applied toward the final payment to be

made under the contract when the defendant completed its dredging operations, and that the question of whether defendant had completed such operations was, under the terms of the contract, to be settled by arbitration.

As a second further and separate answer "and as an alternative defense only in the event the plea in abatement should be denied," the defendant alleged that a settlement had been had between the defendant and the plaintiffs on or about October 29, 1935; that on that date the defendant had paid the plaintiffs the sum of $702, "in full settlement and satisfaction of all controversies under such contract prior to such date"; and "that a large portion, if not all, of the said pretended claim of the plaintiffs" related to dredging done prior to the date of the said settlement.

The demurrer of the plaintiffs to the two affirmative defenses in the defendant's answer was sustained on May 10, 1938, and the defendant was granted three days to file an amended answer. The defendant, however, elected not to plead further.

The action had been instituted on March 11, 1937, and in order to avoid further delay the court on or about May 10, 1938, with the knowledge of counsel for both parties, set the case for trial for May 24 following.

After the commencement of this action certain personal property belonging to the defendant was attached and in order to discharge it from attachment a bond and undertaking were duly executed by Alton L. Collins and T. W. Collins as sureties, and on the entering of judgment against the defendant corporation for the amount prayed for in the complaint, judgment was also entered against the sureties, both of whom joined with the defendant in the notice of appeal.

The following facts from the affidavits in support of, and in opposition to, the motions to set aside the judgment, are not in dispute: On May 10, 1938, W. J. Noon, secretary of the defendant corporation, was notified that the case had been set for trial for May 24, 1938, at ten o'clock in the forenoon. During the week of May 16 Mr. Noon was called by telephone at Baker, Oregon, by Orval D. Yokom, who was then the only attorney representing the defendant. Mr. Yokom told him that the trial of the case was set for May 24 and requested him to be at John Day, where the attorney resided, on Sunday, May 22. Mr. Noon did not go to John Day on that date, but in the evening of May 22 Mr. Yokom received a letter from him stating that Mr. Noon was going to Olympia, Washington, and that if it was imperative for him to be present at the trial, Mr. Yokom could wire him at Olympia. Mr. Yokom did not again get in touch with Mr. Noon, for the reason that he thought it might be possible to compromise the matters in dispute between the parties, inasmuch as arrangement had been made for a meeting on the following day between Mr. Yokom and Mr. Hubbard, plaintiffs' attorney.

On Monday, May 23, attorneys for the litigants discussed the question of a settlement of not only the matters in dispute in the present action, but also other differences growing out of the contract. On that day or early the next morning the attorney for the defendant got in touch with Alton L. Collins, who was one of the principal stockholders of the defendant corporation, and advised him that the attorney could "settle the demands set forth in the plaintiffs' complaint and all damages which the plaintiffs claimed to have suffered on account of the dredging operations for $6,130". Mr. Collins advised him that he did not know the facts con-

cerning the litigation and asked Yokom to contact Mr. Noon. Mr. Collins did not authorize the attorney to settle the case, but did tell him that in the event the defendant lost in the trial court he wanted the attorney to take an appeal.

The affidavits of W. A. Noon, president, and W. J. Noon, secretary, are to the effect that they at no time had authorized Yokom to enter into the stipulation consenting to judgment for the plaintiffs in the amount asked, nor had any other officer of the defendant corporation given such authorization.

Yokom's affidavit is to the effect that he was not authorized by the defendant or any of its officers to consent to a judgment in favor of plaintiffs, but he was of the opinion that it was "best under all circumstances to enter into said stipulation, and I thought that as a matter of law I had authority to enter into such stipulation without express authorization from my client and I entered into such stipulation in absolute good faith; that I intended to and thought I reserved the right of appeal".

According to the affidavit of Mr. Hubbard, attorney for the plaintiffs, he knew that Mr. Yokom was attempting throughout May 23 and until about nine-thirty o'clock in the morning of May 24 to reach Alton L. Collins. At nine-thirty in the morning of May 24 Mr. Yokom advised Mr. Hubbard that he had reached Mr. Collins by telephone but that the latter had neither accepted nor rejected the settlement of $6,130 for all differences between the parties, which had tentatively been agreed upon by the attorneys. At ten o'clock in the morning of Tuesday, May 24, the plaintiffs and their witnesses and attorney appeared in court, fully

prepared for the trial of the case, at which time Mr. Yokom, attorney for the defendant, "appeared and offered to confess judgment against the defendant . . . and stated as his reason therefor that he had been unable, although he had notified the officers and principal stockholders of this corporation in ample time, to secure attendance of any of the officers or stockholders of the defendant corporation and that he had no witnesses, nor testimony to offer."

The stipulation providing for entry of judgment in favor of the plaintiffs was signed with the names of the parties litigant by their respective attorneys of record. After reciting that the demurrer to the affirmative defenses in the answer had been sustained and that the defendant was not satisfied with the ruling on the said demurrer and did not wish to plead further but desired to reserve its right to appeal from the ruling of the trial court on the said demurrer, the stipulation provided that it was agreed by the parties to the litigation that "all the facts alleged in plaintiffs' complaint are hereby admitted by the defendant and the said plaintiffs may take judgment" for the amounts for which the judgment was later entered.

■ Although the defendant gave notice of appeal from the original judgment, its counsel admit that inasmuch as the judgment was entered with the consent of the attorney then representing the defendant, no appeal lies from that judgment. The only question to be decided, therefore, is whether the attorney for the defendant had authority to consent to the judgment which was entered.

■ It is the contention of the plaintiffs that § 2-1204, Oregon Code 1930, authorizes an attorney to confess judgment against his client and that the judgment en-

tered herein was one by confession. The section to which counsel for plaintiffs refer reads as follows:

"The confession and assent thereto shall be in writing, and subscribed by the parties or their attorneys making the same, and acknowledged by each before some officer authorized to take acknowledgments of deeds; but such acknowledgment is not required when the parties or their attorneys shall appear in court when the judgment is given, or before the clerk in vacation by whom the judgment is entered. In all cases, the confession and assent thereto, and the acknowledgment, if any, shall be filed with the clerk."

This section is one of seven relating to judgment by confession, enacted in 1862 as part of the code of civil procedure. No amendments have been made to any of these sections since their enactment. The section on which plaintiffs rely must be read in connection with §§ 2-1201 and 2-1202, Oregon Code 1930. The former of these sections provides that upon the confession of the defendant with the assent of the plaintiff or his attorney judgment may be given against the defendant in any action before or after answer for any amount or relief not exceeding or different from that demanded in the complaint. The next section, 2-1202, provides that when the action is against the state or public or private corporations or minors the confession shall be made by the person upon whom service of summons may be had, and that "in all other cases the confession shall be made by the *defendant in person* [italics supplied]".

■ It is apparent, when these three sections of the code, §§ 2-1201, 2-1202 and 2-1204, are construed together, that the legislature did not intend that an attorney merely by virtue of his employment, without special authorization given therefor, should have authority to confess judgment against his client. In the first of

these sections it is stated that upon the ''confession of the defendant, with the assent of the plaintiff or his attorney,'' judgment may be given against the defendant. The statute expressly provides that the assent shall be given either by the plaintiff or his attorney, but does not refer to confession by the defendant's attorney. Moreover, in § 2-1202 it is expressly provided that in all instances except when the defendant is by necessity represented by agents, the confession shall be made by the defendant in person. The implication of that requirement is that when confession of judgment is made by a corporation it must be made by certain designated officers of the corporation.

■ When read in connection with the preceding sections, § 2-1204 must be construed as conferring upon attorneys merely the power to sign a written confession of judgment on behalf of the defendant when and only when the confession is made by the defendant in person, if an individual, or by the officers of a state or of a public or private corporation. Section 2-1204, *supra*, does not, therefore, confer upon an attorney in his capacity as such in litigation pending before the court, power to confess judgment in favor of the plaintiff, unless expressly thereunto authorized by the defendant.

■ This court has not heretofore construed the statute relating to confession of judgment by a defendant in any case involving the question here presented. It has, however, in a number of instances passed upon the right of an attorney to enter into a compromise in behalf of his client in pending litigation. Before considering those adjudications we shall refer to cases from other jurisdictions.

In *Nothem v. Vonderharr*, 189 Iowa 43 (175 N. W. 967), the attorney for the defendant stipulated for judgment in favor of the plaintiff. In discussing the

authority of the attorney to enter into such an agreement, the supreme court of Iowa quoted with approval from the opinion in the case of *Ohlquest v. Farrell & Co.*, 71 Iowa 231 (32 N. W. 277), as follows:

"It is undoubtedly true that an attorney can not consent to a judgment against his client, or waive any cause of action or defense in the case; neither can he settle or compromise it without special authority. But he is, by his general employment, authorized to do all acts necessary or incidental to the prosecution or defense which pertain to the remedy pursued. The choice of proceedings, the manner of trial, and the like, are all within the sphere of his general authority, and, as to these matters, his client is bound by his action."

The court then proceeds as follows:

"So we say that, under the general employment of counsel in this case, they had no authority to bind Mrs. Anna Vonderharr by the stipulation in this suit, and, the stipulation being unauthorized and in no way binding upon her, the judgment or decree entered upon that stipulation is equally without force and effect as to her."

The supreme judicial court of Massachusetts in *Precious v. O'Rourke*, 270 Mass. 305 (170 N. E. 110), after stating that an attorney acting under his general employment has broad powers to do the things necessary or incidental to the prosecution and management of the case which affect the remedy and not the cause of action, proceeds to state that it was not within the general powers of an attorney employed to represent a plaintiff in litigation to settle the plaintiff's cause of action by entering into a compromise agreement for judgment in favor of the plaintiff. The court further stated:

"When the attorney undertakes to bind his client by an agreement to compromise his client's substantial

rights, the opposing party must ascertain at his peril whether the attorney has authority to make the settlement. Gibson v. Nelson, 111 Minn. 183, 126 N. W. 731, 31 L. R. A. (N. S.) 523, 137 Am. St. Rep. 549. Upon the facts stated in the record the agreement made was not binding on the plaintiff either when made or when approved by the court and filed in the case as the basis for judgment.''

In the case at bar, counsel for the plaintiffs knew that the defendant's attorney had been attempting all day Monday, May 23, and until about nine-thirty o'clock the following morning, to get in touch with the officers or some of the principal stockholders of the defendant corporation. He also knew that shortly before the stipulation for judgment in favor of the plaintiffs was entered into, the attorney for the defendant had been in telephonic communication with a principal stockholder of the defendant corporation, and that the stockholder had refused to give his assent to a compromise of the differences between the parties. It is true that the compromise suggested not only included the pending litigation but also other matters which attorneys for the litigants believed could be settled at the same time.

In *Dwight v. Hazlett*, 107 W. Va. 192 (147 S. E. 877, 66 A. L. R. 102), it is said:

''It is now generally held throughout the United States that the mere relation of attorney and client does not clothe the attorney with implied authority to compromise the matters in litigation. 'The power of an attorney is confined to the prosecution of a suit and the incidentals properly connected therewith; and does not extend to the compromising and discharging of his client's cause of action, without receiving his full claim' '': citing numerous authorities.

In 66 A. L. R., beginning at page 108, there is an exhaustive annotation of authorities to the effect that

an attorney by virtue of his general retainer has no power to compromise his client's cause of action without the client's consent.

The rule is thus stated in 1 Thornton on Attorneys at Law, § 215:

"While counsel has the undoubted right, and it is his duty, to advise his client to accept an advantageous compromise, providing he neither makes, nor causes to be made, any false statement of fact to induce such compromise by the adverse party, he has not, without authority from his client, the power to compromise a cause of action, either pending or to be instituted, in which he has been retained as counsel. The power of an attorney is not co-equal with, co-extensive with, or equivalent to that of the client. He is a special agent, limited in duty and authority to the vigilant prosecution or defense of his client's rights. He can enter into no bargains or contracts which will bind his client, unless the client has specially authorized or subsequently ratified them. All who deal with an attorney must ascertain the extent of his authority; and if they do not inquire, they can claim no protection because they indulged suppositions or conjectures, reasonable or unreasonable, that he had the authority he was exercising."

See, also, 7 C. J. S., § 105, page 928.

This court, in line with the great weight of authority, has also definitely held that "an attorney has no authority arising from his employment in that capacity, no implied power, to compromise his client's claim, or to settle a suit and conclude his client, without the latter's consent": *Hill v. Wilson*, 119 Or. 636 (250 P. 840); *Seaweard v. DeArmond*, 101 Or. 30 (198 P. 916); *Fleishman v. Meyer*, 46 Or. 267 (80 P. 209).

There seems to be an exception to this general rule as to authority of attorneys, which exception is rec-

ognized by some of the courts, to the effect that when an attorney is confronted with an emergency in which prompt action is required to protect his client's interest, and consultation with the client is not possible, he may enter into a compromise. Many of the decisions applying this relaxation of the rule are collated in the above mentioned annotation in 66 A. L. R., at page 120, following the case of *Dwight v. Hazlett,* supra.

In *Lewis v. Vache,* 92 Colo. 358 (20 P. (2d) 554), an attempt was made, based on the exception hereinabove mentioned, to sustain a judgment entered upon a compromise made by an attorney. In refusing to uphold the judgment, the court therein observed:

"The general rule is that an attorney may not compromise his client's case without express authority. Hallack v. Loft, Adm'r, 19 Colo. 74, 34 P. 568. Counsel for Vache admits this rule, but stands upon the exception that, when confronted by an emergency, where prompt action is required to protect his client's interests, and consultation is impossible, the attorney may compromise. 6 C. J. § 175, p. 659; 2 R. C. L. § 75, p. 995. We recognize the exception, and the reasons upon which it rests as stated by the supreme court of Indiana. Union Mut. Life Ins. Co. v. Buchanan, 100 Ind. 63, 76. Here, however, there was no such emergency. Plaintiffs in error had good grounds for a continuance. These had been presented in a motion and were undisputed. Denial of that motion constituted abuse of discretion. Their counsel should have preserved his record and prosecuted error."

In the case before us counsel for the defendant consented to a judgment in favor of the plaintiffs for all that was requested in the complaint. True, there might have been added costs incurred, had the case proceeded to trial. On the other hand, plaintiffs might not have been able to establish that they were entitled to the

amount demanded in the complaint and awarded by the judgment. By going to trial the defendant would have preserved its right of appeal to the supreme court, there to determine the matters which the circuit court adversely decided on demurrers to both the complaint and the affirmative defenses in the answer.

It is not necessary now to decide whether the general rule should be relaxed in this state, in the event that an attorney is confronted with an emergency, for the reason that the confession of judgment in this case was not a compromise, and for the further reason that no emergency was here involved.

There are a few American decisions which hold that the action of the trial court in refusing to vacate a judgment entered on the consent of the parties can be reversed only when there appears to have been an abuse of discretion. In most of those cases, however, there is present a question of fact as to whether or not the client gave his consent to a compromise or settlement. Such is the case of *Smith v. Washburn & Condon*, 38 Ariz. 149 (297 P. 879).

The plaintiffs rely on the case of *Bates v. Bates*, 66 Minn. 131 (68 N. W. 845), to sustain their contention that there was no abuse of discretion on the part of the circuit court in refusing to set aside the judgment. In the later case of *Nelson v. Nelson*, 111 Minn. 183 (126 N. W. 731, 31 L. R. A. (N. S.) 523, 137 Am. St. Rep. 549), the Bates case is discussed and it is said that the holding therein is based on the proposition that there was an emergency, with no opportunity for the attorney to consult with his client, and that the protection of the client's interests demanded immediate action.

We are of the opinion that the attorney representing the defendant in the trial court did not have au-

thority to confess or consent to judgment in favor of the plaintiffs; that the motions made by the defendant were seasonably interposed; and that the judgment should have been set aside and vacated. The attorney then representing the defendant acted in utmost good faith, nevertheless, and believed that he had authority to enter into the stipulation which he signed.

We do not express any opinion as to whether or not the matters here in dispute between the parties must first be submitted to arbitration before plaintiffs are entitled to maintain this action, for the reason that that question is not properly before us at this time.

The orders refusing to set aside the judgment are reversed and the cause is remanded to the circuit court with instruction to vacate and set aside the judgment entered, and to take such further proceedings as are not inconsistent with the views herein expressed.

KELLY and ROSSMAN, JJ., not sitting.