Argued and submitted July 17, 1981, affirmed April 26, 1982

JOHNSON,
*Respondent,*

*v.*

TESKY,
*Appellant.*

(No. 34505, CA 19408)

643 P2d 1344

Larry A. Brisbee, Hillsboro, argued the cause and filed the briefs for appellant.

Robert H. McSweeny, Beaverton, argued the cause for respondent. On the brief were Robert J. Miller, and Blyth, Porcelli, Moomaw & Miller, Beaverton.

Before Buttler, Presiding Judge, Joseph, Chief Judge, and Warren, Judge.

WARREN, J.

## WARREN, J.

Plaintiff brought this action for damages which she suffered in a motor vehicle accident allegedly caused by defendant's negligence. In her supplemental answer, defendant contends that a settlement agreement was entered into between the attorneys for the parties and that plaintiff is bound by that agreement. The trial court determined, in a separate proceeding, that plaintiff had not authorized her attorneys to settle and that her claim could, therefore, go to trial. Plaintiff was awarded $55,000 in the subsequent jury trial. Defendant appeals.

Plaintiff and defendant were involved in a motor vehicle accident on August 24, 1976. In September, plaintiff retained an attorney, Miller, to pursue her claim for injuries arising out of the accident; Miller's associate was involved in the case as well. Those attorneys negotiated on her behalf with defendant's insurer and later with defendant's attorney. Plaintiff admits that she authorized her attorneys to conduct settlement negotiations but maintains that she did not authorize them to bind her to a final figure; it was her understanding that she would not be bound until she signed a release or accepted a check.

In late 1977, plaintiff filed the present litigation. Negotiations continued between the attorneys, but defendant did not increase her original settlement offer of $1500, and trial was scheduled for July 18, 1979. On July 5, Miller's associate spoke by telephone with a secretary for defendant's attorney. There is disagreement over what was said. Plaintiff's attorney testified that he told the secretary that he believed that plaintiff would settle for $1500 and asked that a check and release be prepared. The secretary testified that he flatly stated that plaintiff would settle for $1500. This conflict as to what was said is of no significance, because in subsequent communications between Miller, defendant's attorney and her insurance adjuster it became clear that all attorneys understood that a settlement had been reached, and the case was removed from the trial court docket.

On July 18, defendant's attorney sent Miller a confirming letter, which included a release, a stipulated order of dismissal and a check naming as payees plaintiff,

Miller and the Department of Human Resources, which had a lien. On September 7, Miller mailed the check and release to plaintiff for her signature. On September 14, plaintiff returned the check and release to Miller, indicating that she wanted to go through with the trial. Miller did not inform defendant of plaintiff's rejection until October 4. Defendant subsequently filed the supplemental answer raising the defense of settlement. On November 5, 1980, a trial was held, first to the court on the supplemental answer and then to a jury on plaintiff's injury claim.

■   The only issue on appeal is whether plaintiff is bound by the settlement agreement. Defendant advances three theories: (1) plaintiff's attorneys had actual authority to settle; (2) plaintiff's attorneys had apparent authority to settle, thereby estopping plaintiff from denying the attorneys' authority; and (3) in the alternative, if there was no actual or apparent authority, plaintiff ratified the unauthorized agreement. The initial question is the scope of our review. Defendant characterizes her supplemental answer as a suit for specific performance of the settlement agreement and contends that we must, therefore, review *de novo*. We reject her characterization of this phase of the litigation. Defendant's supplemental answer, settlement, is a legal defense. We treat this as an appeal in an action at law.[1]

■ ■   In her first assignment, defendant contends that the trial court erred in finding that plaintiff's attorneys were without authority to settle her claim. It has been held that an attorney does not have authority arising merely from his employment to settle his client's claim. *Galbraith v. Monarch Gold Co.,* 160 Or 282, 294, 84 P2d 1110 (1938). Similarly, authority to negotiate with the opposing party

---

[1] The record indicates that at trial both parties understood this to be an equitable proceeding and that the trial court treated it as such. Under somewhat similar circumstances, the Supreme Court, in *Johnson v. Lewis,* 239 Or 601, 398 P2d 744 (1965), stated that it would continue to treat such a case as equitable and review *de novo*. It appears to us, however, that the court considered such treatment to be discretionary and, because there is nothing to indicate that either party here relied to its detriment on the misconception, we see no reason to perpetuate their error. Moreover, the result would be no different were we reviewing *de novo*, for the question turns heavily on witness credibility, and we find nothing in this record to cause us to question the trial court's decision to believe plaintiff's evidence.

does not, by itself, imply the power to reach a binding agreement; the client's express authorization is necessary.[2] The trial court, as trier of fact, determined that plaintiff had not given her attorneys the necessary authorization, and there is evidence in the record to support that conclusion.

■■■■ In her second assignment, defendant contends that, even if plaintiff did not authorize her attorneys to settle, she should be estopped to disavow the agreement. Although plaintiff's attorneys lacked actual settlement authority, whether they had apparent settlement authority is a closer question. The client-attorney relationship is one of principal and agent. *Lehman v. Knott,* 100 Or 240, 246, 187 P 1109 (1920). Apparent authority to do an act (settle) is created when *the principal's conduct,* reasonably interpreted, causes a third person mistakenly to believe that the agent has actual authority. *Jones v. Nunley,* 274 Or 591, 595, 547 P2d 616 (1976). The practical difference between actual and apparent settlement authority is that, while in both instances the client is bound, in the latter case he may seek a remedy against his attorney for breach of contract. *See Miotk v. Rudy,* 4 Kan App 2d 296, 605 P2d 587, 589 (1980).

*Galbraith v. Monarch Gold Co., supra,* indicates that employment does not itself create apparent authority to settle. The weight of authority supports this conclusion as well. *Annot.,* 30 ALR2d 944 (1953); *but see Cohen v. Goldman,* 132 A2d 414 (RI 1957); *Folsom v. Miller,* 116 SE2d 1 (Ga App 1960). Another authority states this rule in a slightly different manner: if the client has not held out his attorney as having "any other or greater power than an attorney authorized to take charge of litigation for a client commonly has," apparent authority does not exist. 7A CJS, *Attorney & Client* § 214 (1980). This case differs from *Galbraith* only in that here there was express authority to negotiate, while *Galbraith* does not state whether the

---

[2] Defendant points out that negotiated settlements are favored in the law for important policy reasons and argues that we will undermine that policy if we do not hold plaintiff to this agreement. We do not think that this decision will discourage settlements. The only effect this decision need have is to encourage attorneys negotiating settlements to confirm their, or their opponent's, actual extent of authority to bind their respective clients.

client had authorized negotiation or not. We do not think that this distinction alters the result, however, because an attorney, once employed, commonly has the power to negotiate with opposing counsel. But as the court stated in *Galbraith,* quoting 1 Thornton on Attorneys at Law, § 215:

> " "* * * All who deal with an attorney must ascertain the extent of his authority; and if they do not inquire, they can claim no protection because they indulged suppositions or conjectures, reasonable or unreasonable, that he had the authority he was exercising.' " 160 Or at 294.

■    There was no evidence that plaintiff did or said anything that would reasonably convey the impression to defendant's attorney that her attorneys had other than the usual powers of an attorney in charge of litigation, *i.e.,* to solicit a settlement offer subject to the client's approval. In the absence of such conduct by plaintiff herself, there could be no apparent authority upon which to base an estoppel.

■    In her third assignment, defendant contends that plaintiff should be deemed to have ratified the agreement, because defendant was not informed of its rejection until October 4. It was not proven that plaintiff was aware that a purportedly binding agreement had been reached before she received her attorney's September 7 letter, and she rejected the settlement within a reasonable time thereafter. There was no ratification. *See Minniti v. Cascade Employers Ass'n,* 280 Or 319, 332, 570 P2d 1171 (1977).

Affirmed.

**JOSEPH, C. J.,** specially concurring.

I have no doubt that the majority's analysis accurately reflects the weight of authority nationally and, specifically, in Oregon. Nonetheless, I have grave doubt that the weight of authority is good authority. In this instance I have no doubt that plaintiff retained her attorney to do the best he could for her, including negotiating a settlement that in the attorney's judgment would be reasonable. I have no doubt that her attorney, in complete good faith, acted on that authority and represented actually or by implication to the other attorney that he was authorized to settle for $1,500. I believe that the rule should be that, in the absence of special circumstances, an attorney who is authorized to

negotiate a settlement has authority to bind the client to a settlement that is just and reasonable.

The majority says in footnote 2:

"\* \* \* The only effect this decision need have is to encourage attorneys negotiating settlements to confirm their, or their opponents, actual extent of authority to bind their respective clients."

Given that the settlement offeror-attorney here could not ethically contact the other attorney's client, all he could have done was to ask the other attorney what his authority was. If the other attorney claimed authority that it turned out he did not have, the client would be off the hook and her attorney would be on it. I have great doubt as to whether that is a proper rule to apply in the practice of law.

I therefore concur in the result, because I think it is consistent with the present state of Oregon case law, but the present state of the law is unsatisfactory.