Argued and submitted May 4 at Pendleton, Oregon, affirmed October 10, 1984

## FIRST FEDERAL SAVINGS & LOAN ASSOCIATION OF WALLA WALLA,
*Respondent,*

*v.*

## C.P.R. CONSTRUCTION, INC.,
*Defendant,*
CHOY et al,
*Appellants.*

(CA A28934 - Consolidated Judgment)

| | |
|---|---|
| Umatilla County: | 81-7-815 - CA A28976 |
| | 81-7-816 - CA A28986 |
| | 81-7-817 - CA A28977 |
| | 81-7-818 - CA A28987 |
| | 81-7-819 - CA A28978 |
| | 81-7-820 - CA A28979 |
| | 81-7-821 - CA A28988 |
| | 81-7-822 - CA A28989 |
| | 81-7-823 - CA A28990 |
| | 81-7-824 - CA A28980 |
| Morrow County: | 6829 - CA A28971 |
| | 6830 - CA A28981 |
| | 6831 - CA A28973 |
| | 6832 - CA A28972 |
| | 6833 - CA A28982 |
| | 6834 - CA A28983 |
| | 6835 - CA A28974 |
| | 6836 - CA A28984 |
| | 6837 - CA A28985 |
| | 6838 - CA A28975 |

689 P2d 981

John W. Osburn, Portland, argued the cause and filed the brief for appellants.

W. Eugene Hallman, Pendleton, argued the cause for respondent. With him on the brief were Jim Hayner, Minnick, Hayner & Zagelow; Robert T. Mautz and Mautz, Hallman & Teicher, Pendleton.

Before Gillette, Presiding Judge, and Young and Rossman, Judges.

YOUNG, J.

## YOUNG, J.

In these twenty consolidated cases, plaintiff sought to foreclose certain real estate mortgages. The mortgagors were originally named as parties. They defaulted and are not parties to this appeal. Defendants Choy and Wong entered into contracts to purchase the real estate from the mortgagors.[1] They appeal from a judgment that specifically enforced a settlement agreement entered into by the parties' attorneys and awarded plaintiff attorney fees, expenses and costs. Because this is an equitable proceeding we review *de novo*.[2] ORS 19.125(3). We affirm.

After defendants were served with summonses and complaints they contacted the San Francisco law office of attorney Melvin Belli. They selected the firm because of Belli's reputation for representing "underdogs" and defendants' belief that they could successfully counterclaim for substantial damages. They spoke to Mr. Belli briefly before he referred them to another attorney in his office, Mr. Sabih.

After speaking with Sabih, defendants decided to retain the Belli firm. Sabih offered defendants a handwritten note explaining attorney fees; however, defendants insisted that their agreement be reduced to writing. A retainer agreement was prepared, which contains the following language:

> "We hereby give BELLI power of attorney to execute all complaints, claims, contracts, settlements, checks, drafts, compromises, releases, dismissals and orders as we would ourselves. * * *"[3]

---

[1] There are four defendants: Raymond G. Choy and Lorraine J. Choy, husband and wife, and James Y. Wong and Kam H. Wong, husband and wife. However, it was Mr. Choy and Dr. Wong who retained the Belli law firm. No one has argued that defendants Lorraine J. Choy and Kam H. Wong are not bound by the acts of their spouses.

[2] In *Johnson v. Tesky*, 57 Or App 133, 136 n 1, 643 P2d 1344 (1982), we held that the scope of review of an affirmative defense of a settlement was not *de novo* because it was a legal defense. The difference here is that plaintiff seeks to specifically enforce the settlement agreement. Specific performance is an equitable proceeding and the scope of review is *de novo*.

[3] The entire agreement provides:

*"RETAINER AGREEMENT*

"RE: RAYMOND G. CHOY and JAMES YAT WONG adv. FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION OF WALLA WALLA

"We hereby retain MELVIN M. BELLI, DAVID S. SABIH and BELLI,

Beginning in September, 1981, the parties' attorneys had a number of conversations regarding settlement. The negotiations are documented in a series of letters between the attorneys. As negotiations continued the interest rate on the mortgage was reduced to 9.5%, which was the original rate of interest. By April, 1982, defendants' attorneys were suggesting that defendants would place between $60,000 and $70,000 in a trust account in order to repair the properties. On June 8, 1982, plaintiff made its final offer: defendants would (1) assume the mortgage; (2) pay a 2% mortgage assumption fee; (3) pay all delinquent taxes; (4) put $70,000 into an impound

---

CHOULOS & SAYRE (hereinafter referred to as 'BELLI') as our attorneys in all cases of damages or any claim otherwise arising directly or indirectly from any and all matters involving First Federal Savings and Loan Association of Walla Walla.

"We hereby agree on this date to pay attorneys' fees in the amount of $15,000; $5,000 forthwith and $5,000 30 days from this date (September 28, 1981) and $5,000 30 days thereafter (October 28, 1981). This is the total sum required to prosecute this action and includes all costs thereto.

"We also agree that BELLI will be associated with Rustin A. Brewer, Oregon counsel, and that we will be responsible for all payment of attorneys fees and costs to that law firm.

"We hereby give BELLI power of attorney to execute all complaints, claims, contracts, settlements, checks, drafts, compromises, releases, dismissals and orders as we would ourselves. We grant BELLI permission to make copies and secure copies of all records and documents necessary in the pursuit of this case and all discovery thereto.

"Dated:            August 28, 1981

"CLIENTS:      /S/    Raymond G. Choy
                      RAYMOND G. CHOY

"Address:        _____

                      /S/    James Yat Wong
                      JAMES YAT WONG

"Address:        _____

"We accept:

"BELLI, CHOULOS & SAYRE

"/S/    David S. Sabih
        DAVID S. SABIH

"The Belli Building
 722 Montgomery Street
 San Francisco, CA 94111"

account with plaintiff to repair the properties; (5) pay attorney fees and costs, estimated to be $19,000; and (6) satisfy other specified conditions. On July 1, 1982, plaintiff requested defendants to file an appearance or face default, because they had not formally responded to plaintiff's offer. On July 14, 1982, Carmen, an attorney in the Belli firm, spoke to plaintiff's attorney and accepted plaintiff's June 8 offer.[4] Carmen confirmed the telephone conversation with the following letter:

> "This will confirm our conversation today in which I notified you that *our clients accept your settlement offer,* and that you are preparing the settlement documents for forwarding to us to obtain the closing signatures." (Emphasis supplied.)

In fact, defendants had not personally accepted plaintiff's offer. They immediately attempted to repudiate the settlement and filed their answer and counterclaim. At the same time, the Belli firm was trying to persuade defendants to accept the settlement. On July 27, 1982, Sabih wrote defendants:

> "* * * [W]e obtained for you a settlement offer which restored the status quo * * *. In our view, we fully performed the services agreed to be performed, and it would be an imposition to us, and beyond the scope of the original contract, for us to continue in this litigation without a new and separate agreement for services.
>
> "* * * * *
>
> "We believe that your decision to continue the litigation until interest rates go down and thereby increasing the value of your project is totally unrealistic. Therefore, we would appreciate it if you substitute us out of the case in the next 30 days, otherwise we must demand payment of $15,000 additional which will be nonrefundable and earned as and when received. * * *"

---

[4] Carmen stated that Sabih told him that defendants accepted plaintiff's offer. Sabih later denied that he told Carmen that defendants accepted plaintiff's offer.

Defendants, however, insisted that the Belli firm continue to represent them at no additional cost, relying on the retainer agreement.[5]

Plaintiff filed a supplemental complaint seeking, as its third claim for relief, specific performance of the settlement agreement and its attorney fees, expenses and costs. The trial court decided that defendants' attorneys had actual and apparent authority to effect a settlement. It then entered individual and consolidated judgments that specifically enforced the settlement agreement and awarded plaintiff its attorney fees, costs and expenses.

In their first assignment of error, defendants argue that the trial court erred in finding that defendants' attorneys had actual and apparent authority to enter into a binding settlement. As a preliminary matter, defendants argue that "Carmen's letter did not purport to accept plaintiff's offer." We disagree. As previously quoted, Carmen's confirming letter stated that "our clients accept your settlement offer." The only reasonable interpretation is that defendants accepted the offer.

■■ Nonetheless, defendants insist that they never, in fact, accepted plaintiff's offer. The issue is whether the attorneys had authority to bind their clients to the settlement. As a general rule, mere employment does not give the attorney authority to enter into a binding settlement. *Galbraith v. Monarch Gold Co.,* 160 Or 282, 294, 84 P2d 1110 (1938); *Johnson v. Tesky, supra,* 57 Or App at 136. However, the employment agreement here did more than merely retain the Belli firm. The agreement contains an express power of attorney granting the law firm the authority "to execute all * * * contracts [and] settlements * * * as [defendants] would ourselves." By this language, defendants expressly authorized the law firm to enter into a binding settlement. When defendants retained the firm, they insisted on a written retainer agreement, which they admitted reading before signing. Moreover, when the Belli firm sought to resign or be paid an additional $15,000, defendants relied on the retainer agreement and insisted that the firm continue to represent them at

---

[5] A few days prior to trial the Belli firm resigned as attorneys of record "because of a dispute with the [defendants]."

no additional cost. Defendants are bound by the retainer agreement, and that agreement gave their attorneys express authority to accept plaintiff's offer and settle the case.[6] The trial court did not err in finding actual authority to enter into a binding settlement.[7]

■    In their second assignment, defendants contend that the trial court erred when it awarded plaintiff $67,283.30 for attorney fees, expenses and costs.[8] Defendants correctly point out that the obligation to pay attorney fees, expenses and costs must arise out of an agreement between the parties. One provision of the settlement agreement requires defendants to assume the various mortgages. A clause in all of the mortgages provides:

> "In any suit to foreclose this mortgage * * * or in which the Mortgagee is a party and the above described real property or any part thereof is the subject matter thereof, Mortgagor agrees to pay Mortgagee all costs and a reasonable attorney's fee * * *."

Defendants argue that, because they attempted to repudiate the settlement, they never assumed the mortgages and thus are not bound by their terms. Defendants are, however, bound by the settlement agreement and under its terms they are required to assume the mortgages. Equity will regard as done that which ought to be done. *Heider v. Dietz,* 234 Or 105, 112, 380 P2d 619 (1963); *Young v. Neill et al,* 190 Or 161, 175, 220 P2d 89, 225 P2d 66 (1950). Therefore, as of July 14, 1982, when defendants accepted plaintiff's offer, they were bound

---

[6] Defendants would have us adopt an even narrower rule for granting attorneys actual authority to settle a client's case. In essence, defendants' proposed rule would be that a client can still reject a settlement even when the client gave the attorney express authority to settle. This proposal ignores

"* * * the basic distinction between an agent's authority to act versus an agent's responsibility to produce certain consequences. If an agent is authorized to perform a certain act on behalf of his principal, the principal cannot escape liability that arises from that act because the principal does not like the consequences." *Hiransomboon v. Unigard Mutual Ins. Co.,* 46 Or App 493, 499, 612 P2d 306 (1980).

[7] Because we hold that there was actual authority to settle we do not decide whether there was apparent authority to settle.

[8] The trial court awarded plaintiff $50,834.25 for attorney fees, $9,898.15 for expenses and $6,550.90 for costs and disbursements. Defendants do not contest the reasonableness of the award.

by the attorney fee clause.[9] The trial court did not err in awarding plaintiff attorney fees, expenses and costs.

Affirmed.

---

[9] The settlement required defendants to pay plaintiff's attorney fees and costs through the completion of the settlement. They were estimated to be $19,000. The additional fees and costs were incurred after defendants' attempted repudiation of the settlement.